**Dorothy LACY and Richard Lacy, Plaintiffs,**

v.

**Charles R. GREEN, Jr., M. D., Defendant.**

Superior Court of Delaware, New Castle County.

Submitted Dec. 18, 1980.

Decided March 9, 1981.

James W. Semple, of Flanzer & Isaacs, Wilmington, for plaintiffs.

Warren B. Burt, of Wilmington, for defendant.

BIFFERATO, Judge.

Plaintiffs, Dorothy and Richard Lacy, brought this medical malpractice claim for defendant's reckless and negligent disregard for Dorothy Lacy's health and safety regarding a malignant, inverted mass in her right breast. Following defendant's demand for the convening of a Malpractice Review Panel, pursuant to 18 *Del.C.* § 6802, plaintiffs moved to strike that demand on the grounds that this procedure, as established by 18 *Del.C.* ch. 68, subchapter 3, is unconstitutional in that it is violative of the Seventh and Fourteenth Amendments of the Constitution of the United States and the State of Delaware.

In 1976 the Delaware Legislature found as follows:

**1174** ■

"WHEREAS, the number of suits and claims for damages both in Delaware and throughout the Nation as well as the necessary costs of defense and the size of judgments and settlements thereon, arising from professional patient care have increased tremendously in the past several years; and

"WHEREAS, there has been a tremendous increase in the cost of liability insurance coverage for health care providers in Delaware, and in some instances the withdrawal of liability insurance companies from the business of insuring health care providers in Delaware, endangering the ability of the citizens of Delaware to continue to receive quality health care as well as adequate and just compensation for negligent injuries; and

"WHEREAS, the General Assembly determines it is necessary to make certain major modifications to its current legal system as it relates to health care malpractice claims if the citizens of Delaware are to continue to receive a high quality of health care while still assuring that any person who has sustained bodily injury or death as a result of a tort or breach of contract on the part of a health care provider resulting from professional services rendered, or which should have been rendered, can obtain a prompt determination of adjudication of that claim and receive fair and reasonable compensation from financially responsible health care providers who are able to insure their liability, under a strictly construed fault principal as now, at a cost which is not prohibitive and does not lead to the problems and practices described above, while still maintaining Delaware's overall legal system as to health care malpractice claims except as modified by this legislation."

Preamble to 60 Del.Laws, ch. 373 (1976). Accordingly it adopted the Health Care Malpractice Act. 60 Del.Laws, ch. 373, § 1 (1976); codified at 18 Del.C. ch. 68 (1980 Cum.Supp.). Thus, the Act was designed to make available professional health care insurance at a reasonable cost and to establish a system through which a victim who has sustained injury or death as a result of a tort or breach of contract by a health care provider can be assured of a prompt adjudication of the claim and receive a fair and reasonable recovery for the losses sustained.

Under the pertinent parts of 18 Del.C. ch. 68, any party to a civil action alleging medical malpractice has the right to convene a Malpractice Review Panel which reviews the case prior to the trial. 18 Del.C. § 6802. The review panel shall be composed of five voting members, including two health care workers, one attorney and two lay persons. 18 Del.C. § 6804(a). After reviewing the evidence and after any hearing before the panel requested by any party, the Malpractice Review Panel renders a written opinion stating the grounds upon which it is based and identifying the persons, texts or other authorities which were consulted by the panel in reaching its conclusion. Any party aggrieved by the panel's opinion shall have the right to review by the Superior Court of such opinion and the evidence considered by the panel. Based on a complete record of the panel proceedings, the Superior Court shall review the opinion, striking any portion of the panel's opinion which the Court finds to be based on error of law or not supported by substantial evidence. 18 Del.C. § 6811. This opinion shall then be admissible as *prima facie* evidence in any proceeding before the Superior Court. 18 Del.C. §§ 6811(c), 6812.

Plaintiffs have asserted that the statute establishing the Medical Malpractice Review Panel and providing for the admission of the written opinion of that panel before the Superior Court is unconstitutional because: (1) it violates the right to trial by jury; (2) it violates the right to equal protection of the laws; (3) it delegates judicial authority to an administrative agency; (4) it violates the right of free access to the Court, and (5) it violates the right to due process of law.

■ As this Court considers these various constitutional challenges, it must be remembered that a legislative enactment enjoys a presumption in favor of its consti-

tutionality and will not be declared unconstitutional unless it clearly and convincingly violates the Constitution. Under this Court's traditional self-restraint test, all doubts are to be resolved in favor of a finding of constitutionality. The party asserting the unconstitutionality of a statute bears the burden of overcoming the presumption of its validity. *Justice v. Gatchell*, Del.Supr., 325 A.2d 97, 102 (1974).

Medical malpractice acts similar in nature and scope to Delaware's act have recently been enacted in other states as a response to what is described as a "medical malpractice crisis." None of the statutes to which the Court has been referred is identical to that of Delaware. The attacks on the constitutionality of these statutes have varied from state to state. However, the majority of the cases cited by counsel or discovered by the Court have found the statutes consistent with due process, equal protection, and jury trial guarantees. *Attorney General v. Johnson*, Md.Ct.App., 282 Md. 274, 385 A.2d 57 (1978); *Carter v. Sparkman*, Fla.Supr., 335 So.2d 802 (1976); *Comiskey v. Arlen*, N.Y.Supr., App.Div., 55 A.D.2d 304, 390 N.Y.S.2d 122 (1976); *Eastin v. Broomfield*, Ariz.Supr., 116 Ariz. 576, 570 P.2d 744 (1977); *Everett v. Goldman*, La. Supr., 359 So.2d 1256 (1978); *Johnson v. St. Vincent Hospital, Inc.*, Ind.Supr., 404 N.E.2d 585 (1980); *Jones v. State Board of Medicine*, Idaho Supr., 97 Idaho 859, 555 P.2d 399 (1976); *Parker v. Children's Hospital of Philadelphia*, Pa.Supr., 483 Pa. 106, 394 A.2d 932 (1978) (later found unconstitutional in *Mattos v. Thompson*, Pa.Supr., 491 Pa. 385, 421 A.2d 190 (1980), because of an oppressive delay in processing and an impermissible infringement upon constitutional right to jury); *Paro v. Longwood Hospital*, Mass.Supr., 373 Mass. 645, 369 N.E.2d 985 (1977); *Prendergast v. Nelson*, Neb. Supr., 199 Neb. 97, 256 N.W.2d 657 (1977); *State ex rel. Schneider v. Liggett*, Kan. Supr., 223 Kan. 610, 576 P.2d 221 (1978); *State ex rel. Strykowski v. Wilkie*, Wisc. Supr., 81 Wis.2d 491, 261 N.W.2d 434 (1978); *Woods v. Holy Cross Hospital*, 5th Cir., 591 F.2d 1164 (1979). The highest courts of three states have held such acts unconstitutional. *Arneson v. Olson*, N.D.Supr., 270 N.W.2d 125 (1978); *Mattos v. Thompson, supra*, 491 Pa. 385, 421 A.2d 190; *Wright v. Central Dupage Hospital Ass'n*, Ill.Supr., 63 Ill.2d 313, 347 N.E.2d 736.(1976). In addition, the plaintiffs cited the decision of an Ohio trial court in *Simon v. St. Elizabeth Medical Center*, Ohio C.P., 355 N.E.2d 903 (1976) which declared its statute unconstitutional. Of course, none of these opinions is binding upon this Court, but all are entitled to our careful consideration because the reasoning in them will be useful. See also Annot. 80 A.L.R.3d 583 (1977).

### RIGHT TO TRIAL BY JURY

■ The first question to be considered is whether 18 *Del.C.* ch. 68, subchapter 3, impairs the right to trial by jury as guaranteed by Del.Const. Art. I, § 4 and Art. IV, § 19. The citizens of Delaware are guaranteed a right to a jury trial "as heretofore." Del.Const. Art. I, § 4. This provision of Del.Const. Art. I, § 4 guarantees the right to a jury trial as it existed at common law. *Fountain v. State*, Del.Supr., 275 A.2d 251 (1971). Plaintiffs argue that their right to trial by jury is not "as heretofore" because by allowing the panel opinion to be placed into evidence, the judge is charging the jury with respect to matters of fact in violation of Del.Const. Art. IV, § 19 and impermissibly commenting on the evidence, demoting the juror "to a mere proofreader of the panel's factual finding." Plaintiffs insist that the judge's comment to the jury is that the panel opinion is to be given more weight than the other evidence and that it is "presumed correct" unless rebutted by the party against whom the adverse finding has been made. The plaintiffs do not claim that the right to jury trial is denied, but rather that the jury will be unable to objectively evaluate the panel's opinion and that the right to trial by jury has, therefore, been infringed upon.

■ The gravamen of the right to jury trial is that a party asserting a claim is entitled to have a jury be the final arbiter of the facts in dispute. *Guthridge v. Pen-*

*Med, Inc.,* Del.Supr., 239 A.2d 709 (1967). Plaintiffs assert that the conscientious juror, upon being instructed that the expert opinion of the panel is *prima facie* evidence, will do little more than proofread the panel's factual findings and adopt the panel's expert judgment, rather than making its own unbiased judgment.

■ The Court is unable to agree with plaintiffs' position. 18 *Del.C.* § 6812 provides that the opinion reached by the panel should be admissible as *prima facie* evidence "but such opinion shall not be conclusive and any party shall have the right to call, at said party's cost, any witness who appeared before or submitted reports to the malpractice review panel as a witness." Thus, despite the panel hearing, if one is even demanded, the jury is still the ultimate trier of fact. Even if a panel is convened, once its opinion is made, the plaintiff is still free to continue its complaint and proceed to present her case to a jury.

There is absolutely no question that a panel opinion adverse to the claimant casts an increased burden upon the claimant. But, the converse would also be true if it were adverse to the medical care provider. The rule on admissibility of the panel opinion is a two-way street that equally affects both sides. *Prendergast v. Nelson, supra,* 256 N.W.2d at 666. The "opinion shall not be conclusive" and the parties "are free to present the same witnesses and exhibits before the trial jury that they presented to the ... panel, and the jury may draw its own conclusions from their testimony, even if, in so doing, it rejects the panel's finding." *Woods v. Holy Cross Hospital, supra,* 591 A.2d at 1180.

The United States Supreme Court, in *Meeker v. Lehigh Valley Railroad Co.,* 236 U.S. 412, 35 S.Ct. 328, 59 L.Ed. 644 (1915) "held that an interstate commerce commis-sion finding could be submitted to the jury as *prima facie,* though rebuttable, evidence of the facts as determined by the commission" without violating the Seventh Amendment. *Suchit v. Baxt,* N.J.Super.L., 176 N.J.Super. 407, 423 A.2d 670, 674 (1980).[1] In upholding the provision in the Interstate Commerce Act providing for the admission of these findings as *prima facie* evidence, the Court observed that:

"This provision only establishes a rebuttable presumption. It cuts off no defense, interposes no obstacle to a full contestation of all the issues, and takes no question of fact from either court or jury. At most, therefore, it is merely a rule of evidence. It does not abridge the right of trial by jury, or take away any of its incidents. Nor does it in anywise work a denial of due process of law." *Meeker v. Lehigh Valley Railroad Co., supra,* 236 U.S. at 429, 35 S.Ct. at 335.

While *Meeker* is concerned with a federal statute and the Federal Constitution, its rationale is persuasive. There is no substantive difference between the procedure approved by the Supreme Court in *Meeker* and that called by 18 *Del.C.* § 6812. The parties remain as free to call, examine and cross-examine witnesses as if the pretrial panel opinion had not been made. Section 6812 cuts off no defenses, interposes no obstacle to full consideration of all the issues, and takes no question of fact from the jury. "Although the panel decision is evidential, and this evidence would not exist but for [18 *Del.C.* ch. 68], plaintiff[s are] free to attack and impeach the panel determination by competent evidence." *Suchit v. Baxt, supra,* 423 A.2d at 675.

The practical effect of the introduction of a panel opinion unfavorable to the plaintiffs is to increase the plaintiffs' task of persuading the jury, but is not violative of her right

1. Although the Seventh Amendment right to a jury trial does not apply in state court, many states, including Delaware, have constitutional provisions modeled after the Seventh Amendment of the United States Constitution. *Minneapolis & St. Louis Railroad Co. v. Bombolis,* 241 U.S. 211, 217, 36 S.Ct. 595, 596–97, 60 L.Ed. 961 (1916). Thus, in construing Del. Const. Art. I, § 4 and Art. IV, § 19 as they apply to medical malpractice panels, this Court will apply Seventh Amendment analysis and case law. It should be noted that the plaintiffs' original motion to strike incorrectly cites to the Seventh Amendment of the U. S. Constitution rather than the provisions of the Delaware Constitution.

to a jury trial. Upon losing at a panel hearing, the plaintiffs know that they must overcome the impact of the panel's "expert opinion" if they are to win. It should be remembered that no panel opinion unfavorable to the plaintiffs can even reach the jury unless plaintiff has first presented a *prima facie* case. Thus, no new rule is established since the burden was always on the plaintiffs to prove their case. Undoubtedly, this *prima facie* case will include expert testimony. Once the *prima facie* case has been made, the panel "expert opinion" will be introduced by defendant, as *prima facie* evidence. What results is both sides answering to the other's so-called *prima facie* evidence. Thus, the jury alone is left with weighing the competing "expert opinions."

> "The legal burden of persuasion has remained the same, but the task of the plaintiff to persuade has been increased enormously. The increased expenditure of money and effort required in such circumstances to convince the jury that plaintiff should prevail is consonant with our adversary system and the constitutional guarantee of the right to trial by jury." *Johnson v. St. Vincent Hospital, Inc., supra,* 404 N.E.2d at 593.

Therefore, under the Delaware statute the jury still remains the ultimate arbiter of the factual questions raised at the trial.

## RIGHT OF EQUAL PROTECTION OF THE LAWS

Plaintiffs argue that the Health Care Malpractice Act violates equal protection of the State and Federal Constitutions because it impermissibly distinguishes between medical malpractice victims and the victims of other tortious conduct, and places an arbitrary and unjustifiable financial and evidentiary burden on the medical malpractice victims.

Traditionally, equal protection analysis involves the court applying one of two standards, either the strict scrutiny test or the rational basis test.[2] Strict scrutiny is applied whenever a state statute contains a "suspect classification" or limits a "fundamental right." In all other cases state laws are tested under the rational basis test. Since no claim is made in this case that a fundamental right or a suspect class is involved, the applicable test is the rational basis standard. Under the rational basis test:

> "[t]he constitutional safeguard [of equal protection] is offended only if the classification rests on ground *wholly irrelevant* to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any statement of facts reasonably may be conceived to justify it."

*Woods v. Holy Cross Hospital, supra,* 591 F.2d at 1172, citing from *McGowan v. Maryland,* 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399 (1961).

It is apparent that the distinction between malpractice claimants and other tort claimants is reasonably related to the legitimate purpose of the act, i. e., the continued protection of the public health and welfare by assuring the availability of malpractice insurance at a reasonable rate. The special circumstances that gave rise to Delaware's Health Care Malpractice Act are stated in: (1) Executive Order No. 92, where former Governor Tribbett created the "Delaware Medical Malpractice Study Commission;" (2) this commission's ultimate report; and (3) the preamble to the Act itself. All of these documents found that a "crisis" had developed in Delaware's health care industry because of rising malpractice insurance rates. One significant

---

2. "In recent years another level of equal protection analysis has arguably appeared between strict scrutiny and the rational basis test, a 'means scrutiny' test." *Woods v. Holy Cross Hospital, supra,* 591 F.2d at 1172. Under this standard the court determines whether the statutory classification *substantially* furthers a purported legislative purpose. This test, when used, has been limited to "quasi" suspect classifications such as sex. Such a test is inapplicable in the present case.

factor found to be causing the rising insurance rates was an increase in Delaware, and throughout the nation, in malpractice litigation. After extensive legislative hearings and innumerable hours spent drafting improved legislation, it was determined that one way to reduce frivolous litigation and to encourage the settlement of meritorious claims was to allow voluntary reviewing of the cases prior to trial.

■ The voluntary use of the review panel and the subsequent admission of the panel's opinion into evidence was a reasonable legislative response to the malpractice "crisis." The Legislature is free to exercise its police power by enacting legislation that has a reasonable connection with the promotion of the general health and welfare of our citizens. The Court has no reason to question the need for this legislation, and the plaintiffs have failed to produce any evidence which would indicate otherwise. Thus, there is no merit in the plaintiffs' equal protection challenge.

## DELEGATION OF JUDICIAL AUTHORITY TO AN ADMINISTRATIVE AGENCY

■ Plaintiffs also assert that the statute in question unconstitutionally delegates judicial power to an administrative agency in violation of the principle of Separation of Powers. Article IV, § 1 of the Delaware Constitution provides that the judicial power of this state is vested in certain courts existing at the time of the Constitutional Convention of 1897 and "such other courts as the General Assembly, with the concurrence of two-thirds of all the Members elected to each House, ... shall from time to time by law establish...." Plaintiffs insist that the Legislature created a new judicial body, the Malpractice Review Panel, which performs judicial functions, without complying with the constitutionally mandated procedures. Plaintiffs rely solely on *Wright v. Central DuPage Hospital Association, supra*, 347 N.E.2d 736, which held an Illinois statute unconstitutional on the grounds that the Legislature exercised judicial power by vesting them in a medical malpractice panel.

Constitutionally, the essence of judicial power is the final authority to render and enforce a judgment. An "entity does not exercise the sovereign power of the State constitutionally assigned to the judiciary if its decision is in *no* sense final, binding or enforceable." *Attorney General v. Johnson, supra*, 385 A.2d at 65. See also *Eastin v. Broomfield, supra*, 570 P.2d at 750. Under the statute questioned in *Wright*, the powers and functions of the panel were considered those of a court because judgment could be entered on a panel decision, with such judgment being enforceable in court. Unlike *Wright*, the determination of a Delaware medical malpractice panel has no binding effect other than to be admitted as *prima facie* evidence. A judgment cannot be entered predicated upon a panel decision. The Delaware Act, in effect, provides for a voluntary pretrial settlement conference with hopes of promoting an early disposition of the case after receiving the expert panel's opinion. This in no way encroaches on the powers or prerogatives of the court. Not only are the parties afforded a judicial review of the determination of the panel, but are entitled to a jury trial in Superior Court. If the plaintiffs are allowed to prevail on this point, then no administrative agency or commission performing a judicial or quasi-judicial function would survive constitutional examination. The enactment of 18 *Del.C.* ch. 68 does not constitute an unconstitutional exercise of judicial power.

## FREE ACCESS TO THE COURT

Plaintiffs argue that the convening of a Malpractice Review Panel causes them unreasonable delay and expense, therefore impeding their right to a jury trial and their free access to the judicial system. 18 *Del.C.* § 6813 states that each panel member "shall be paid at the rate of $100 per diem plus actual and necessary expenses incurred in the performance of their official duties, but not to exceed a total of $700 for both expenses and compensation paid to any 1 member of the panel for 1 matter." Under this same section, the panel has discretion-

ary authority to assess the costs of panel and expert witnesses called by the panel up to a maximum amount of $1,000, upon the party against whom the majority opinion of the panel is rendered. The Superior Court is also given the power to waive the assessment of these fees. These assessments are not automatically placed on the claimant, but on the party against whom the panel opinion is rendered, if the panel and Superior Court, in their discretion, so desire.

■ Granted, if a Medical Malpractice Review Panel is convened, the parties will be responsible for obtaining and compensating their expert witnesses for testimony at the panel hearing. This is an additional expense not experienced by parties to other types of tort cases, but that does not mean, as plaintiffs insist, that "the malpractice panel is nothing but an instrument for obstructing a malpractice plaintiff's right to a jury trial and to open and easy access to the judicial system." In *State ex rel. Strykowski v. Wilkie, supra,* 261 N.W.2d 434, the court stated that "[s]tates are under no constitutional obligation to neutralize the economic disparities which inevitably make resort to the courts different for some plaintiffs than others." *Id.* at 444.

Plaintiffs' economic hardship argument is not persuasive. Expenses for investigation and preparation are part and parcel of the pretrial preparation of all claims. If a panel is convened, the hearing before the panel will generate evidence admissible at the future jury trial:

"The cost to the party in whose favor the opinion is rendered would be in the range that such party would expect to pay to develop such evidence individually. And the cost to the party against whom the opinion is rendered has been subjected to a cost by the process which would be much the same as he expects to pay to discover his opponent's evidence." *Johnson v. St. Vincent Hospital, Inc., supra,* 404 N.E.2d at 592.

While the submission of the malpractice claim to a review panel before trial could cause some degree of financial hardship to some parties, there is no constitutional impediment by the procedure.

■ The possible delay resulting from the convening of a Medical Malpractice Review Panel has not been shown to be unreasonable. The plaintiffs do not question the availability of the right to access to court and the right to jury trial, but rather they question the reasonableness of the postponement of that right. As previously discussed, the reason for the postponement of the right results from an effort on the part of the state to achieve a compelling state interest through a procedure reasonably designed to effectuate such interest. In theory, the Act does not violate any constitutional guarantees. However, does the Act's actual operation result in an unconstitutional infringement on any rights?

Delay routinely occurs between the decision to prosecute a claim and the trial. Plaintiffs have not shown how the delay in jury trial is unreasonable when a review panel is requested. In the present case the complaint was filed on June 13, 1979. Discovery procedures commenced at this time, including interrogatories, depositions and admissions. The discovery was delayed by untimely answers, necessitating orders of the Court to compel answers. Finally, on March 28, 1980, nine months into the complicated discovery process, the defendant demanded the convening of a review panel. On April 3, 1980, the plaintiffs moved to strike the demand and to stay the panel hearing. Originally, briefing on this motion was to begin on June 1, 1980, but plaintiffs' opening brief was not filed until July 10, 1980, in conjunction with briefing on another motion that was later conceded. From the time of defendant's demand for a review panel to the present, discovery has apparently continued without any delay as a result of the pending motion to strike the demand.

Since the plaintiffs immediately challenged the convening of the panel, no actual delay can be found in this case. The plaintiffs have also failed to come forth with any statistics to convince the court that the convening of a panel generally results in a delay contrary to the purpose of the Act, i. e., to expedite the disposition of medical

malpractice cases and to encourage settlement of those which are meritorious. At oral argument the defendant stated that the convening of a panel causes about a five-month delay in a process that takes more than two years. Plaintiff did not challenge this five-months figure.[3] The Court finds that a possible five-months delay is not constitutionally unreasonable in light of the possible final benefits of a procedure that is rationally related to a legitimate objective. As previously stated, in regard to the right to jury trial, the plaintiffs are in no way precluded from access to a final court determination. At this point, the delay complained of has not been shown to be so unreasonable as to be violative of the plaintiffs' right to a jury trial and free access to the judicial system.[4]

### DUE PROCESS OF LAW

■ Plaintiffs' final constitutional challenge is a claimed denial of due process. Plaintiffs first argue that they are denied due process because "[t]o the extent that a jury gives any deference to a panel's decision, that jury's decision is tainted by the biased fact finding of the physician packed panel." The panel is not really "physician packed" since only two of the five members are health care providers (only one of these two must be a physician). Plaintiffs urge that bias is created in favor of the health care provider because of the great influence that the two health care providers will have on the other members of the panel, especially to two lay persons. This argument is based on a large degree of speculation. There is an insignificant statistical difference between the results when the case is presented to the panel and when it is presented to a jury. (Defendant's Answering Brief p. 44). Plaintiffs' assertion that health care providers will ignore the law and facts in arriving at their decision with

the other three panel members is totally unsubstantiated. Absent evidence to the contrary, panel members must be presumed to be persons of honesty and integrity. *Parker v. Children's Hospital of Philadelphia, supra,* 394 A.2d at 944; *State ex rel. Strykowski v. Wilkie, supra,* 261 N.E.2d at 446.

■ The plaintiffs also argue that panel members who are health care providers are financially interested in panel decisions because they, along with all other health care providers in the State, pay malpractice premiums, and the rates for these premiums are directly affected by the results which the panel renders. As a general rule, for a hearing to withstand the constitutional due process requirements, one having a substantial pecuniary interest in a proceeding should not adjudicate that dispute. *Gibson v. Berryhill,* 411 U.S. 564, 571, 93 S.Ct. 1689, 1694, 36 L.Ed.2d 488 (1973). However, the financial interest is again too speculative to require automatic disqualification of all health care providers from the panel. Since there is no allegation of actual bias of a health care provider and since the statutory procedure for the selection of the panel, found in 18 *Del.C.* § 6805, does not suggest a probability of systematic bias or prejudice, the requirements of due process are satisfied. *State ex rel. Strykowski v. Wilkie, supra,* 261 N.E.2d at 446.

· The remaining due process arguments dealing with the coercion of settlements and the delay in trial have been dealt with previously and are without merit.

### CONCLUSION

Every legislative act is presumed constitutional until the act under review clearly

---

**3.** In fact, the affidavit of Audrey L. Fisher, stating that five months had been average time between the filing of the demand and the date of the decision was submitted by plaintiffs in the appendix to their opening brief.

**4.** In *Mattos v. Thompson,* Pa.Supr., 491 Pa. 385, 421 A.2d 190 (1980), a close statistical

analysis by the Court revealed that though theoretically constitutional, the malpractice panel, with its original exclusive jurisdiction, actually caused unreasonable delay and a substantial infringement upon the constitutional right to jury trial. No such statistics have been presented to our Court for analysis.

 

appears to contravene some provision of our State or Federal Constitution. The Court has exhaustively reviewed the many contentions urged by the plaintiffs in their attack on the Health Care Malpractice Act. They have failed to meet the burden of proof assumed by them, and the Court finds no merit in any of their contentions. Plaintiffs' motion to strike the demand for the convening of a Medical Malpractice Review Panel is DENIED. A review panel should be convened as soon as practicable.

IT IS SO ORDERED.