**John R. DiFILIPPO, Plaintiff,**

v.

**Joseph R. BECK, M.D., and Charles Karpinski, M.D., Defendants.**

**Civ. A. No. 77–456.**

United States District Court,
D. Delaware.

Aug. 25, 1981.

---

Robert T. Aulgur, Jr. of Wilson & Whittington, P.A., Wilmington, Del., and Francis X. Nolan of Donsky, Levin, Dashevsky & Nolan, P.C., Philadelphia, Pa., for plaintiff.

Jane R. Roth of Richards, Layton & Finger, Wilmington, Del., for defendant Charles Karpinski, M.D.

Victor F. Battaglia and Samuel R. Russell of Biggs & Battaglia, Wilmington, Del., for defendant Joseph R. Beck, M.D.

## MEMORANDUM OPINION

LATCHUM, Chief Judge.

In this diversity action, plaintiff, John R. DiFilippo, seeks compensatory damages from the defendant medical doctors, Joseph R. Beck and Charles Karpinski, for injuries plaintiff allegedly sustained as a result of defendants' malpractice committed during their course of treatment of the plaintiff for back pain, leg weakness and kidney stones. (Docket Item ["D.I."] 1.) Jurisdic-

tion exists by virtue of 28 U.S.C. § 1332(a)(1).[1]

Defendants have now petitioned this Court to convene a "malpractice review panel" pursuant to 18 *Del.C.* § 6814 for the purpose of reviewing plaintiff's malpractice claims. Plaintiff opposes this petition on a number of grounds which the Court will later consider. The Court will first discuss the background and purposes of the Delaware Health Care Malpractice Act (the "Act").[2]

## A. BACKGROUND—THE ACT

The adoption of the Act in 1976 was the response of the Delaware General Assembly to what it perceived to be a malpractice crisis in medical care. In so acting, the General Assembly made these legislative findings:

WHEREAS, the number of suits and claims for damages both in Delaware and throughout the Nation as well as the necessary costs of defense and the size of judgments and settlements thereon, arising from professional patient care have increased tremendously in the past several years; and

WHEREAS, there has been a tremendous increase in the cost of liability insurance coverage for health care providers in Delaware, and in some instances the withdrawal of liability insurance companies from the business of insuring health care providers in Delaware, endangering the ability of the citizens of Delaware to continue to receive quality health care as well as adequate and just compensation for negligent injuries; and

WHEREAS, the General Assembly determines it is necessary to make certain major modifications to its current legal system as it relates to health care malpractice claims if the citizens of Delaware are to continue to receive a high quality of health care while still assuring that any person who has sustained bodily injury or death as a result of a tort or breach of contract on the part of a health care

provider resulting from professional services rendered, or which should have been rendered, can obtain a prompt determination of adjudication of that claim and receive fair and reasonable compensation from financially responsible health care providers who are able to insure their liability, under a strictly construed fault principal as now, at a cost which is not prohibitive and does not lead to the problems and practices described above, while still maintaining Delaware's overall legal system as to health care malpractice claims except as modified by this legislation.

60 *Del.L.*, ch. 373, Preamble (1976). Thus, the Delaware state courts have found that the purpose of the Act was—

to make available professional health care insurance at a reasonable cost and to establish a system through which a victim who has sustained injury or death as a result of a tort or breach of contract by a health care provider can be assured of a prompt adjudication of the claim and receive a fair and reasonable recovery for the losses sustained.

*Lacy v. Green*, 428 A.2d 1171, 1174 (Del.Super.1981).

The Act employs a variety of means to implement these goals. One of the principal means adopted was to provide for Malpractice Review Panels whose duties were described by the Delaware Superior Court in *Lacy v. Green, supra* at 1174, as follows:

Under the pertinent parts of 18 *Del.C.* ch. 68, any party to a civil action alleging medical malpractice has the right to convene a Malpractice Review Panel which reviews the case prior to the trial. 18 *Del.C.* § 6802. The review panel shall be composed of five voting members, including two health care workers, one attorney and two lay persons. 18 *Del.C.* § 6804(a). After reviewing the evidence and after any hearing before the panel requested by any party, the Malpractice Review Panel renders a written opinion stating

---

1. Plaintiff is a citizen of Pennsylvania and defendants are Delaware citizens. (D.I. 1, ¶¶ 1–4; D.I. 4, ¶¶ 1–4; D.I. 5, ¶¶ 1–5.)

2. 60 *Del.L.*, ch. 373 (1976).

the grounds upon which it is based and identifying the persons, texts or other authorities which were consulted by the panel in reaching its conclusion. Any party aggrieved by the panel's opinion shall have the right to review by the Superior Court of such opinion and the evidence considered by the panel. Based on a complete record of the panel proceedings, the Superior Court shall review the opinion, striking any portion of the panel's opinion which the Court finds to be based on error of law or not supported by substantial evidence. 18 *Del.C.* § 6811. This opinion shall then be admissible as *prima facie* evidence in any proceeding before the Superior Court. 18 *Del.C.* §§ 6811(c), 6812.

In addition, 18 *Del.C.*, § 6814 requires the Delaware Insurance Commissioner to "convene malpractice review panels in the manner set forth in this subchapter upon request of a Federal District Court Judge sitting in a civil action in the District of Delaware alleging malpractice in the manner instructed by the said federal court, but also in a manner as consistent as possible with the process of selecting such panels provided for in Superior Court actions in this chapter." That section further provides that "[t]he selection process of any such panel in a federal court action and its powers and duties shall be subject to the order of that said court and/or such rules as the federal court system shall designate for the implementation of such panels.[3]

Other means adopted by the General Assembly to deal with the perceived malpractice crisis are the provisions contained in 18 *Del.C.* §§ 6862, 6864 and 6865.

Section 6862 alters the collateral source doctrine in medical malpractice suits so as to permit the fact-trier to consider (a) evidence of any *public* collateral source of compensation or benefits, present and fu-

ture, which will or might be paid to plaintiff because of his injuries, and (b) evidence of any and all changes, including prospective changes, in the marital, financial or other status of the plaintiff known at the time of trial.[4]

Section 6864 provides that where a plaintiff recovers a malpractice judgment against a health care provider, the Court may, after determining the amounts of the judgment awarded as compensation for future pain and suffering, for future expenses of care, and for any other future damages, respectively, direct that an amount sufficient to compensate the plaintiff for attorney's fees, litigation expenses and damages incurred for past health care and pain and suffering be paid immediately to plaintiff and that the remainder of the award be paid to plaintiff in equal or unequal monthly payments together with interest thereon. That section also provides that, if a plaintiff receiving installment payments shall die, the obligation to pay all or a portion of the remaining balance of the award shall terminate.

Finally, § 6865 limits the amount of the plaintiff's attorney's fees to 35% of the first $100,000 in damages, 25% of the next $100,000 of damages and 10% of the balance of any awarded damages, provided, however, that a plaintiff has the right to elect to pay for his attorney's services on a mutually satisfactory *per diem* basis, if the election is exercised in written form at the time of employment.

## B. THE ERIE RAILROAD ISSUES

█ Plaintiff's first contentions are that the reference of his malpractice claims to a Malpractice Review Panel and the subsequent admission of the Panel's written opinion as *prima facie* evidence at trial of this action are matters of procedure and under the doctrine of *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)

---

**3.** The Insurance Commissioner is prohibited from convening a malpractice review panel unless provision is made for paying the expenses of such a panel out of funds other than those of the "General Fund of the State." In the present case, provision satisfactory to the In-

surance Commissioner has been made for payment of those expenses. (D.I. 68, ¶ 3.)

**4.** Section 6862 is not applicable to life insurance or *private* collateral sources of compensation or benefits.

are not applicable to an action brought in Federal Court, and that in any case reference of the matter to a Malpractice Review Panel would impermissibly divest this Court of its diversity jurisdiction. Plaintiff relies upon *Wheeler v. Shoemaker*, 78 F.R.D. 218 (D.R.I.1978) which he finds is "substantially on all fours" with his contentions. In *Wheeler*, the U.S. District Court considered a request to refer a malpractice diversity action to a Medical Liability Mediation Panel established pursuant to the Rhode Island Medical Malpractice Reform Act. The Court held that to refer the action to a state panel appointed by the Presiding Justice of the State Superior Court would be an impermissible intrusion upon the Congressional grant of diversity jurisdiction because a referral to "such a panel amounts to little more than furnishing the state court an opportunity to pass upon the claim initially." Relying upon *Byrd v. Blue Ridge Rural Electric Cooperative, Inc.*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958), the *Wheeler* court also refused to "establish a reference procedure mimicking the state courts but staffed by appointment of the federal court" on the ground that reference to a malpractice panel was a matter of procedure which under the *Erie R.R.* doctrine ought not be employed in a federal court.

This Court declines to follow *Wheeler* because that case can no longer be considered a correct statement of the law. With the sole exception of the *Wheeler* court, every federal court which has considered medical malpractice acts similar to that of Delaware has held that the policies underlying the *Erie R.R.* doctrine require that diversity malpractice actions be referred to review panels as required by the applicable state laws. *Feinstein v. Massachusetts General Hospital*, 643 F.2d 880 (C.A. 1, 1981), *affirming* 489 F.Supp. 419 (D.Mass.1979); *DiAntonio v. Northampton-Accomack Memorial Hospital*, 628 F.2d 287 (C.A. 4, 1980); *Davison v. Sinai Hospital of Baltimore, Inc.*, 617 F.2d 361 (C.A. 4, 1980), *affirming* 462 F.Supp. 778 (D.Md.1978); *Stoner v. Presbyterian University Hospital*, 609 F.2d 109 (C.A. 3, 1979); *Edelson v. Soricelli*, 610 F.2d 131 (C.A. 3, 1979); *Hines v. Elkhart General Hospital*, 603 F.2d 646 (C.A. 7, 1979); *Woods v. Holy Cross Hospital*, 591 F.2d 1164 (C.A. 5, 1979); *Kanouse v. Westwood Obstetrical and Gynecological Associates*, 505 F.Supp. 129 (D.N.J.1981); *Sander v. Providence Hospital*, 483 F.Supp. 895 (S.D.Ohio 1979); *Seoane v. Ortho Pharmaceuticals, Inc.*, 472 F.Supp. 468 (E.D.La. 1979); *Byrnes v. Kirby*, 453 F.Supp. 1014 (D.Mass.1978); *Wells v. McCarthy*, 432 F.Supp. 688 (E.D.Mo.1977); *Marquez v. Hahnemann Medical College and Hospital of Philadelphia*, 435 F.Supp. 972 (E.D.Pa. 1976); *Flotemersch v. Bedford County General Hospital*, 69 F.R.D. 556 (E.D.Tenn. 1975).

By implication many of these decisions must also be read to have rejected *Wheeler's* alternative holding that reference of a diversity case to a malpractice panel established by state law would impermissibly intrude upon the Congressional grant of diversity jurisdiction to federal district courts [5] and at least three of the cases have

---

**5.** A number of the courts have distinguished *Wheeler* on the ground that under the Rhode Island statute, unlike the state statutes which they were reviewing, the malpractice panel was essentially an adjunct to the state courts and had to be considered a state judicial body. This Court could similarly rest its holding upon an alternative ground that the Delaware Act is distinguishable from the Rhode Island Act in several important respects. For example, the panels in Delaware are not appointed or controlled by the state courts. The selection process is solely controlled by an administrative office, the Insurance Commissioner. Thus, reference of the case to a Delaware panel could not be considered tantamount to requiring a party in diversity to bring his case first to a state court. Secondly, § 6814, unlike the Rhode Island statute, specifically provides for the appointment of parallel federal malpractice review panels whose "powers and duties shall be subject to the order of [the Federal District Court] and/or such rules as the federal court system shall designate for the implementation of such panels." Thus, reference to a panel pursuant to § 6814 could, by no stretch of the imagination, be considered reference to a state judicial tribunal. However, the Court need not rely upon this distinction because it has deter-

explicitly rejected that argument. *Feinstein v. Massachusetts General Hospital, supra*, 643 F.2d at 887–88; *Davison v. Sinai Hospital of Baltimore, Inc., supra; Seoane v. Ortho Pharmaceuticals, Inc., supra*.

The *Wheeler* decision itself has been specifically rejected by one other district court in this circuit. *Kanouse v. Westwood Obstetrical and Gynecological Associates, supra* (considering a New Jersey court rule), and was apparently also rejected by the Third Circuit in *Edelson v. Soricelli, supra*, 610 F.2d at 138 (considering the Pennsylvania statute).[6] Furthermore, it appears that both holdings of *Wheeler* were effectively overruled in *Feinstein v. Massachusetts General Hospital, supra*, 643 F.2d at 887–90. Thus, faced with overwhelming precedent mandating referral to malpractice panels under a variety of state laws substantially similar to Delaware law, and finding itself in accord with the reasoning of the majority position articulated in those cases, this Court holds that a referral of this action to a malpractice review panel pursuant to 18 *Del.C.* § 6814, and the admission of the panel's opinion as *prima facie* evidence in the trial of this action will not deprive this Court of its diversity jurisdiction and is mandated by the *Erie R.R.* doctrine.

## C. THE CONSTITUTIONAL ISSUES

The plaintiff has also leveled a broad-based attack upon the constitutionality of the Delaware Act. Specifically, plaintiff contends that the Act is unconstitutional because it delegates legislative power to the judiciary, that the Act in general and several specific provisions violate the Equal Protection clause by impermissibly discriminating against a class of malpractice victims, that § 6864 by making possible the termination of part of an award for future pain and health care expenses upon the death of a prevailing plaintiff deprives a plaintiff of property without due process of law and in violation of the equal protection clause, that the Act deprives the plaintiff of the constitutional right to a jury trial, and that permitting the review panel's decision to be admitted into evidence also constitutes a denial of due process. Plaintiff apparently grounds his challenges upon both the State and Federal Constitutions.

### 1. State Constitutional Issues

■ In *Lacy v. Green, supra*, the Delaware Superior Court considered essentially all the challenges raised by the plaintiff here, except for the challenge to § 6864, and upheld the constitutionality of the Act. In so holding, the Superior Court noted that the vast majority of state courts have upheld similar statutes in the face of due process, equal protection and jury trial challenges. *Lacy v. Green, supra*, 428 A.2d at 1175 (cases collected). This Court is convinced that the Delaware Supreme Court would reach the same conclusions on the state constitutional issues as did the Superior Court in *Lacy* and join the majority of other state courts which have rejected the challenges raised by the plaintiff here. Thus, the Court holds the Act constitutional under the Delaware Constitution over plaintiff's jury trial, equal protection, due process and separation of powers arguments.

With respect to federal constitutional issues, the conclusions reached in *Lacy* carry far less weight and this Court must conduct its own independent evaluation of those constitutional claims and also consider plaintiff's challenge to § 6864 which was not at issue in *Lacy*.

### 2. Plaintiff's Challenge to § 6864

■ Turning to the challenge to § 6864, the Court concludes that the question raised is premature. A basic principle of judicial restraint requires that a court not "an-

---

mined that both holdings in *Wheeler* have been thoroughly repudiated.

**6.** The Pennsylvania Supreme Court later held that the inefficient operation of the Pennsylvania malpractice review panels resulted in such extraordinary delays that the Pennsylvania statute, as applied, violated a commonwealth constitutional provision. Consequently, the Third Circuit has held that the Pennsylvania statute no longer need be applied in federal diversity actions. *Firich v. The American Cytoscope Makers, Inc.*, 635 F.2d 259 (C.A. 3, 1980).

ticipate a question of constitutional law in advance of the necessity of deciding it." *Ashwander v. TVA*, 297 U.S. 288, 346–47, 56 S.Ct. 466, 482–483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring); *Stoner v. Presbyterian University Hospital, supra*, 609 F.2d at 111–12. The provisions of the Delaware Act are wholly severable, 60 *Del.L.* ch. 373, § 6880 (1976), as are the provisions of the Delaware Code in general, 1 *Del.C.* § 308. Section 6864 relates only to the payment of awards after judgment, while the malpractice review panel's function is limited to "making a finding as to whether or not the defendant or defendants acted or failed to act within the applicable standards of care," determining whether "the conduct complained of was or was not a factor in the resultant damages and if so, whether the plaintiff suffered: a. Any disability and the extent and duration of the disability, and b. Any permanent impairment and the percentage of the impairment." 18 *Del.C.* § 6810. The panel will assess no damages and enter no judgment. Section 6864 will thus only come into play in the event that a jury in this case finds liability and assesses an award for future damages and the Court decides to make the judgment payable in periodic installments pursuant to § 6864. Thus, it is wholly speculative that § 6864 will ever be applied to this plaintiff and although it perceives no merit to plaintiff's contention, the Court will not now render a ruling on plaintiff's premature challenge. *Stoner v. Presbyterian University Hospital, supra; Hines v. Elkhart General Hospital, supra.*

### 3. *The Separation of Powers Issue*

■ Plaintiff next contends that reference to a Malpractice Review Panel pursuant to § 6814 is unconstitutional because it delegates legislative power to the judiciary. Particularly, plaintiff maintains that § 6814 allows this Court to select and empower a Review Panel in the absence of clearly defined standards. This is simply a misreading of the provision. Section 6814 merely provides that the Panel's procedures are to be governed by federal rules and orders entered by this Court. It thus recog-

nizes the fact that in federal diversity suits federal procedures must be followed. The provision directs that procedures should be "in a manner as consistent as possible with the process of selecting such panels provided for in Superior Court actions in this Chapter." The statute thus sets firm direction to this Court that the procedures should be sufficiently similar to assure that the Review Panels will serve the same substantive functions in this Court as they do in state court actions. Thus, pursuant to § 6814, this Court will direct that the procedures to be followed in this action shall be identical to those set forth for the Delaware Superior Court by the Act except that wherever the Act reads "Superior Court," it shall be deemed to read "United States District Court for the District of Delaware" and wherever the Act reads "Prothonotary" it shall be deemed to read "Clerk of the United States District Court for the District of Delaware."

### 4. *Equal Protection Issues*

■ Plaintiff next argues that the Act as a whole violates the equal protection clause because it treats malpractice claimants and their attorneys differently from other type of tort claimants and their attorneys. In making this argument, plaintiff points out that the Act uniquely burdens malpractice claimants by requiring additional time and expense to submit the claim to a Review Panel, by reducing access to the malpractice plaintiff's bar by restricting attorney's fees as provided in § 6865, by altering the collateral source doctrine set forth in § 6862, and by allowing a possible reduction of an award for future pain and health care as provided in § 6864.

The Court finds no merit to plaintiff's argument that the Act as a whole violates the equal protection clause because he has completely ignored the severability provision applying to its various sections. Moreover, the Court finds no merit to plaintiff's equal protection challenge to §§ 6862 and 6864 because these two sections relate to the calculation and award of damages which are issues that will not be considered

by the panel. Therefore, for the reasons stated earlier, the Court will not consider these challenges to these two specific sections at this time. However, because the provisions establishing the review panel, and § 6865, which limits attorney's fees, presently affect plaintiff,[7] the Court will turn now to consider plaintiff's equal protection challenges to them.

Parties to a malpractice action, whether plaintiffs or defendants, have never been held to be a suspect or a quasi-suspect class for the purpose of equal protection analysis and indeed they do not possess any of the characteristics which would lead a Court to find a suspect or quasi-suspect class. Furthermore, plaintiff has failed to identify any fundamental right which is impacted by the Act. Therefore, the proper standard of equal protection review in this case is the rational basis test. *DiAntonio v. Northampton-Accomack Memorial Hospital, supra*, 628 F.2d at 291; *Woods v. Holy Cross Hospital, supra*, 591 F.2d at 1172–74; *Seoane v. Ortho Pharmaceuticals, Inc., supra*, 472 F.Supp. at 472. As recently re-enunciated by the Supreme Court, the rational basis test is satisfied whenever "the legislative classification . . . is rationally related to achievement of the [legitimate] statutory purposes." *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 463, 101 S.Ct. 715, 723, 66 L.Ed.2d 659 (1981).

In the instant case, there is no dispute that the Act's objectives, *i. e.*, reducing the cost of health care by reducing the cost of insurance, assuring prompt settlement of malpractice claims, and assuring fair and reasonable recoveries on malpractice claims—are legitimate. The question which the Court must address is whether the classifications are rationally related to the objectives. In this regard, in order to show that the classification is irrational, plaintiff "must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental deci-

sion-maker" and plaintiff "cannot prevail so long as 'it is evident from all the considerations presented to [the legislature], and those of which we may take judicial notice, that the question is at least debatable.' " *Id.*, 101 S.Ct. at 724. It appears readily evident that reference of malpractice claims to a tribunal of impartial experts will aid in eliminating frivolous claims as well as promoting mediation and settlement without a costly trial. This in turn will reduce the expenses of malpractice insurance which reduction will be passed on to physicians in the form of lower premiums and eventually to the medical care consumer in the form of reduced rates. Thus, the Court concludes that there is a rational basis for requiring that medical malpractice claims be submitted, upon demand, to a review panel without requiring other tort claims be treated in a like manner. *DiAntonio v. Northampton-Accomack Memorial Hospital, supra*, 628 F.2d at 291; *Woods v. Holy Cross Hospital, supra*, 591 F.2d at 1174–75; *Seoane v. Ortho Pharmaceuticals, Inc., supra*, 472 F.Supp. at 472. Similarly, it is rational to limit attorney's fees which may be collected in malpractice suits and not in other actions because the limitation is also related to reducing malpractice insurance costs and, consequently, medical costs. For example, the attorney's fee limitation is likely to deter attorneys from instituting frivolous suits and to encourage the settlement of such suits, thus saving litigation expenses and ultimately reducing medical costs to the consumer. Therefore, the Court concludes that neither the malpractice review panel requirement nor the limitation on attorney's fees violates the equal protection guarantee.

### 5. The Jury Trial Issue

█ Plaintiff next contends that the reference of his malpractice claim to a review panel and the later admission of the panel's opinion at trial violates his Seventh

---

**7.** The limitation of attorney's fees allowable may affect an attorney's willingness to accept an initial retainer or to pursue an action to trial rather than accept a settlement. Thus, plaintiff is presently affected because of the possible disincentives built into the law which may be affecting his attorney and the malpractice bar in general.

Amendment right to a jury in two respects. First, he argues that the delay and expense of litigating his claim before a review panel initially will deny his right to a jury trial. Second, he maintains that a jury is likely to accept the panel's opinion without question and make no independent judgment on the merits of his claim. These arguments are frivolous. Under the Act, the ultimate determination is made by the jury. Although the review panel's opinion is *prima facie* evidence, each party retains the right to present any relevant evidence to the jury and to call and cross-examine witnesses relied upon by the panel. The Seventh Amendment does not require the jury to make its findings at the earliest possible date but only that it be the ultimate arbiter. Similarly, the Seventh Amendment does not mandate that a particular kind or quality of evidence be presented to the jury. *Ex Parte Peterson*, 253 U.S. 300, 309–311, 40 S.Ct. 543, 546–547, 64 L.Ed. 919 (1920); *DiAntonio v. Northampton-Accomack Memorial Hospital, supra*, 628 F.2d at 292; *Woods v. Holy Cross Hospital, supra*, 591 F.2d at 1177–81; *Seoane v. Ortho Pharmaceuticals, Inc., supra*, 472 F.Supp. at 473–74; *see Edelson v. Soricelli, supra*, 610 F.2d at 139–40.

### 6. *The Due Process Issue*

■ Plaintiff's final contention is that the admissibility of the review panel's opinion which is reached by reliance upon evidence adduced pursuant to the procedures prescribed in §§ 6807, 6808 and 6809 will deny plaintiff due process of law. Particularly, plaintiff objects to the fact that the review panel can consider any evidence which "in its opinion" possesses probative value, even second and third degree hearsay. Plaintiff also argues that the authority given to the panel to examine reports of other health care providers and to consult experts will effectively deny a party the right of cross-examination and "imposes no uniform standard of procedure." Plaintiff continues his attack on the ground the panel will be biased because 40% of its membership will be composed of medical care providers. Finally, he contends that the ad-

mission into evidence of adverse findings by the panel will "effectively and substantially reduce [plaintiff's] ability to prove [his] case" and that to force him, at defendants' request, to submit to such a flawed procedure could so substantially impair his ability to prevail at trial that he would be denied due process of law. The Court disagrees.

First, as a factual matter, plaintiff's characterization of the review panel's procedure is simply wrong. There is no danger of bias. The fact that a panel member is a health care provider does not prove any bias. Furthermore, an unbiased panel is assured by the fact that the Act allows parties to agree upon the members of the panel or, in the event the parties are unable to agree, the Act allows each of the parties three peremptory challenges as to each list from which a member is chosen by lot and unlimited challenges for cause. 18 *Del.C.* § 6805(2), (3) & (6).

Second, the Court finds that the panel procedures fully comport with the norms of due process. Although the panel, unlike a judge or jury in an American court of law, is granted independent investigatory powers, the panel must give the parties notice of all sources of information which it consults on its own initiative. 18 *Del.C.* § 6809. Also any party has a right to a hearing on the record before the panel and can use compulsory process to enable it to adduce evidence relevant to the issues before the panel. 18 *Del.C.* § 6808. At the hearing, a party is afforded the opportunity to probe or challenge any source of information consulted by the panel on its own initiative. Although the rules of evidence shall be "followed in so far as practicable," any evidence may be considered which, in the opinion of the panel, "possesses probative value commonly accepted by reasonable, prudent persons in the conduct of their affairs." 18 *Del.C.* § 6808. The panel is required to make specific findings and to state the grounds on which those findings are based and to reveal the "persons, texts or other authorities" relied upon. Finally, the parties have the right to have the panel's findings of fact and conclusions reviewed and modified by the Court. 18 *Del.C.* § 6811.

The Court's finding that these procedures fully comport with principles of due process is made clear by the discussion in *Mathews v. Eldridge*, 424 U.S. 319, 348–49, 96 S.Ct. 893, 909–10, 47 L.Ed.2d 18 (1976) where the Supreme Court found that in order to satisfy the requirements of due process an administrative tribunal, such as the one at issue here, need not mirror the procedures of a common law court of law, but could adopt flexible procedures as long as those procedures provided adequate notice and an opportunity to be heard. The Supreme Court stated:

> But more is implicated in cases of this type than ad hoc weighing of fiscal and administrative burdens against the interests of a particular category of claimants. The ultimate balance involves a determination as to when, under our constitutional system, judicial-type procedures must be imposed upon administrative action to assure fairness. We reiterate the wise admonishment of Mr. Justice Frankfurter that differences in the origin and function of administrative agencies "preclude wholesale transplantation of the rules of procedure, trial, and review which have evolved from the history and experience of courts." *FCC v. Pottsville Broadcasting Co.*, 309 U.S. 134, 143 [60 S.Ct. 437, 441, 84 L.Ed. 656] (1940). The judicial model of an evidentiary hearing is neither a required, nor even the most effective, method of decisionmaking in all circumstances. The essence of due process is the requirement that "a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it." *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. [123] at 171–172 [71 S.Ct. 624 at 648–649, 95 L.Ed. 817] (Frankfurter, J., concurring). All that is necessary is that the procedures be tailored, in light of the decision to be made, to "the capacities and circumstances of those who are to be heard," *Goldberg v. Kelly*, 397 U.S. [254] at 268–269 [90 S.Ct. 1011 at 1020–1021, 25 L.Ed.2d 287] (footnote omitted), to insure that they are given a meaningful opportunity to present their case.

Without question the panel procedures required by the Act fall within requirements of *Mathews v. Eldridge*.

However, the Court need not even consider the procedures mandated for the review panel in order to find that the admission of the panel's opinion in the trial of this case would not violate the due process guarantee. This is so because the parties are given a full opportunity to litigate their positions before the jury where they will be able to adduce contrary evidence, refute the evidence relied upon by the panel, and cross-examine any witnesses relied upon by the panel. The panel's opinion, although *prima facie* evidence, is not conclusive. Thus, the procedures for a review panel, are, by analogy, no more than the appointment of a neutral expert at a party's request. The admissibility of such an "expert's" opinion, which can be fully challenged before the jury, clearly does not violate due process. *See Meeker & Co. v. Lehigh Valley Railroad Co.*, 236 U.S. 412, 429–30, 35 S.Ct. 328, 335–336, 59 L.Ed. 644 (1915); *Edelson v. Soricelli, supra*, 610 F.2d at 139–40; *Woods v. Holy Cross Hospital, supra*, 591 F.2d at 1176–77; *Seoane v. Ortho Pharmaceuticals, Inc., supra*, 472 F.Supp. at 472–73; cf. *Ex Parte Peterson, supra*.

Consequently, the Court concludes the claims in this action must be referred to a Malpractice Review Panel pursuant to 18 *Del.C.* § 6814, that the referral of the claims to such a panel and the subsequent admission of the panel's opinion at trial comport with equal protection, due process and jury trial guarantee, that the provision in 18 *Del.C.* § 6814 allowing this Court to establish procedures governing such panels in cases pending in this Court does not violate any separation of power restrictions, and that the restrictions on attorney's fees fully comports with the equal protection clause.

Accordingly, the Court will enter an order convening a Malpractice Review Panel to follow the procedures outlined in this memorandum opinion.