Manuel S. SEOANE, etc.

v.

ORTHO PHARMACEUTICALS, INC.
et al.

Civ. A. No. 77–3187.

United States District Court,
E. D. Louisiana.

June 29, 1979.

Salvador E. Gutierrez, Jr., Terrence J. Hand, New Orleans, La., for plaintiff.

H. Martin Hunley, Jr., New Orleans, La., for defendants.

## MEMORANDUM OPINION

EDWARD J. BOYLE, Sr., District Judge:

The court previously denied the motion of defendant, Dr. Frederick A. Pou (hereinafter Dr. Pou) for summary judgment, insofar as it sought dismissal of plaintiff's action, but stayed the action pending the submission of plaintiff's proposed complaint to a medical malpractice review panel (hereinafter review panel) pursuant to LSA–R.S. 40:1299.41 *et seq.* Our reasons for such action follow.

Plaintiff is seeking damages for the wrongful death of his wife, which allegedly occurred as a result of her ingestion of a contraceptive pill prescribed by Dr. Pou. All other parties defendant have previously been dismissed by the court. *See* Record Documents Nos. 9 and 34. Dr. Pou has moved for a summary judgment dismissing plaintiff's action for failure to comply with the provision of the Louisiana medical malpractice statute requiring pre-suit review of all malpractice claims against covered health care providers by a review panel. LSA–R.S. 40:1299.41 *et seq.* In opposition to the motion, plaintiff has leveled a barrage of constitutional challenges at the legislation. Plaintiff has also challenged the timeliness of Dr. Pou's motion.

Under LSA–R.S. 40:1299.41 *et seq.*, no lawsuit against a covered health care provider (which term includes doctors, registered nurses and hospitals, among others, who elect to participate in the program) or his insurer may be commenced in any Louisiana court before the claimant's proposed complaint has been presented to a review panel composed of an attorney, two physicians chosen respectively by plaintiff and by defendant, and a third physician chosen by the other two physician members of the panel.

The complainant is required to initiate the procedure by filing a copy of his proposed complaint with the Louisiana Commissioner of Insurance, together with a request for review of his claim by the review panel. The commissioner forwards the complaint to the Clerk of the Louisiana Supreme Court, who prepares a list of five attorneys within the parish which would be the proper venue for a lawsuit against the health care provider. From this list, the parties select the attorney-panelist, who acts as chairman and advisor to the panel, but does not vote. The complainant must notify the attorney-chairman and the defendant-to-be of his choice of a physician-panelist within thirty days after certification by the commissioner of insurance of the filing of a request for a review panel. After complainant selects a physician-panelist, the defendant has ten days to select a physician-panelist. The two physicians then select a third panelist.

The panel bases its decision upon a review of documentary evidence only. It determines whether the accused health care provider has complied with the standard of care which is statutorily defined, whether any such departure from the standard of care was a factor in plaintiff's damages and, if so, whether plaintiff suffered any disability or impairment. In the event of a finding of liability, the panel makes no finding with respect to damages. The panel issues a written report which is admissible in evidence, but is not conclusive, in a subsequent court trial of the complaint. At trial, any party may call any member of the review panel to testify and, if called, such member must testify. The costs of the review panel procedure are borne by the

prevailing party, except that if a prevailing claimant is unable to pay the costs, they are to be borne by the health care provider subject to reimbursement out of any money judgment subsequently obtained by the claimant. The filing of a request for review of a medical malpractice claim suspends the prescriptive period for filing suit until 90 days following issuance of the opinion of the review panel. A claimant may file a lawsuit regardless of whether the opinion of the review panel is favorable or unfavorable to his claim.

In opposition to Dr. Pou's motion, plaintiff asserts that the mandatory screening by a review panel deprives him of a federal forum and, therefore, should not be required in a diversity case. Alternatively, he alleges that the review panel provision deprives him of equal protection because it results in:

1. Unequal treatment of medical malpractice defendants according to whether they are "covered health care providers" under the statute;

2. Unequal treatment of victims injured by medical malpractice as contrasted with victims injured by other types of torts;

3. Preferential treatment for doctors as opposed to other groups of professionals;

4. Unequal treatment of victims of medical malpractice who suffer serious injuries (i. e., those which would be compensable by monetary damages in excess of the statutory maximum of $500,000) as opposed to victims of medical malpractice who suffer less serious injuries;

5. Submission of plaintiff's claims to a panel of experts who have a personal interest in reducing medical malpractice insurance premiums by suppressing meritorious claims;

6. Compulsory arbitration in violation of Louisiana law;

7. Delegation of authority by the legislature without proper definition of the standards to be applied; and

8. An unreasonable classification because it has not been demonstrated that the alleged medical malpractice insurance crisis is genuine or that the malpractice review panel will alleviate the crisis either by reducing the number of frivolous lawsuits or by encouraging out-of-court settlements.

Plaintiff also alleges that the review panel procedure violates his right to due process because it results in:

1. Compulsory arbitration;

2. Incurring of additional expense in litigating before the review panel;

3. Prevention of immediate access to the courts;

4. Causing a plaintiff to be bound by the opinion of the review panel and by an expert plaintiff did not select;

5. Causing plaintiff to be deprived of the right of cross examination;

6. Deprivation of plaintiff's right to choose an attorney to represent him; and

7. Consideration by the review panel of evidence which would be inadmissible at trial, namely hearsay evidence.

Plaintiff also contends that the procedure of submitting medical malpractice claims to the review panel deprives him of his right to a jury trial because nonjudicial members of the review panel allegedly exercise a judicial function and because the admissibility of the panel's opinion at trial, if it is unfavorable to the plaintiff, lessens the strength of plaintiff's case to the jury.

Finally, plaintiff claims that defendant's motion for summary judgment is untimely and should not be considered by the court.

Prior to a consideration of the points raised by plaintiff, we note that the Supreme Court of Louisiana has sustained the review panel legislation against constitutional challenges similar to those asserted by plaintiff. *See Everett v. Goldman*, 359 So.2d 1256 (La.1978). While we recognize that we are not bound by the Louisiana Supreme Court's disposition of the plaintiff's federal constitutional challenges, nevertheless, we are persuaded by the

Court's well-reasoned decision in *Everett.* In addition, numerous other federal and state court decisions have upheld the Louisiana review panel procedure. *See Dent v. City of New Orleans,* Civil Action No. 78–1232 (E.D.La.1979); *Rose v. Ochsner Clinic,* Civil Action No. 78–507 (E.D.La.1978); *Vincent v. Voorhies,* 359 So.2d 1129 (La.App. 3 Cir. 1978); *Knepper v. State Through Department of Health and Human Resources Administration,* 359 So.2d 1127 (La.App. 3 Cir. 1978); *Butler v. Flint-Goodridge Hospital,* 354 So.2d 1070 (La.App. 4 Cir. 1978).

## I. PLAINTIFF'S CONTENTION THAT THE LOUISIANA STATUTE NEED NOT BE APPLIED BY FEDERAL COURT IN DIVERSITY CASES

■ The federal courts which have considered this question, with one exception, have concluded that medical malpractice review panel provisions of state laws are substantive rules of law of the forum which must be applied by a federal court in a diversity case. *See Woods v. Holy Cross Hospital,* 591 F.2d 1164 (5 Cir. 1979) [Florida]; *Davison v. Sinai Hospital of Baltimore, Inc.,* 462 F.Supp. 778 (D.Md.1978) [Maryland]; *Wells v. McCarthy,* 432 F.Supp. 688 (E.D.Mo.1977) [Missouri]; *Marquez v. Hahnemann Medical College and Hospital,* 435 F.Supp. 972 (E.D.Pa.1976) [Pennsylvania]; and *Flotemersch v. Bedford County General Hospital,* 69 F.R.D. 556 (E.D.Tenn.1975) [Tennessee].

The United States District Court for the District of Rhode Island reached a contrary conclusion in *Wheeler v. Shoemaker,* 78 F.R.D. 218 (D.R.I.1978). However, the Rhode Island statute under consideration established a medical review panel which commenced its activities only after suit had been filed in state court. The federal court characterized such review panel as an "adjunct of the state court rather than an independent agency." We distinguish *Wheeler* on that basis. Accordingly, we find that, if it is constitutional, we must apply the Louisiana statutory review panel provision to this case.

## II. PLAINTIFF'S CONTENTION THAT THE LOUISIANA STATUTE DEPRIVES HIM OF EQUAL PROTECTION

In ruling upon plaintiff's equal protection and due process attacks upon the statute, we note that the parties have not cited, and we have not located in our independent research, any case decided by the Fifth Circuit or the United States Supreme Court dealing with the Louisiana medical review panel provisions. In the absence of a controlling precedent, the parties have cited cases from other jurisdictions dealing with other statutory schemes.[1] When possible, we have compared the statutory schemes in those states with the Louisiana act under scrutiny. We have concluded that, for various reasons, many of the cases cited by the parties are inapplicable to this case.[2] We

1. *See Woods v. Holy Cross Hospital,* 591 F.2d 1164 (5 Cir. 1979) [Florida]; *Davison v. Sinai Hospital of Baltimore, Inc.,* 462 F.Supp. 778 (D.Md.1978) [Maryland]; *Wheeler v. Shoemaker,* 78 F.R.D. 218 (D.R.I.1978) [Rhode Island]; *Carter v. Sparkman,* 335 So.2d 802 (Fla. 1976) [Florida]; *Jones v. State Board of Medicine,* 97 Idaho 859, 555 P.2d 399 (1976) [Idaho]; *Wright v. Central DuPage Hospital Association,* 63 Ill.2d 313, 347 N.E.2d 736 (1976) [Illinois]; *State ex rel. Strykowski v. Wilkie,* 81 Wis.2d 491, 261 N.W.2d 434 (1978) [Wisconsin]; *Simon v. St. Elizabeth Medical Center,* 355 N.E.2d 903 (Ct. of Comm. Pleas 1976) [Ohio]; and *Graley v. Sataryatham,* 343 N.E.2d 832 (Ct. of Comm. Pleas 1976) [Ohio].

2. *Wheeler v. Shoemaker,* 78 F.R.D. 218 (D.R.I. 1978) is distinguishable for the reasons previ-

ously set forth. In *Jones v. State Board of Medicine,* 97 Idaho 859, 555 P.2d 399 (1976), the Supreme Court of Idaho declined to rule upon the merits of the plaintiffs' constitutional challenges to that state's statute requiring submission of medical malpractice claims to a review panel. Instead, the court remanded the case for a fuller development of the facts. Therefore, *Jones* did not dispose of the constitutional issues before us.

We distinguish *Wright v. Central DuPage Hospital Association,* 63 Ill.2d 313, 347 N.E.2d 736 (1976) because the Illinois Supreme Court held the right to jury trial was violated by the medical malpractice review panel only after the Court had held the statute unconstitutional based upon purely state constitutional grounds. 347 N.E.2d 736, 741. The Fifth Circuit has also noted this reason for distinguishing *Wright* in

also conclude that the statutory scheme of the State of Florida as discussed by the Fifth Circuit in *Woods v. Holy Cross Hospital*, supra, is most similar to that established by the Louisiana statute.

■■■ Because the statute requiring review of claims of medical malpractice by a review panel contains no suspect classification and limits no fundamental right, it need not be subjected to the strict scrutiny test. It need only meet the rational basis test under which the burden is upon the challenger of the statute to demonstrate that the restriction is wholly arbitrary. *See Woods v. Holy Cross Hospital*, supra at 1172–1174. We note the background of the alleged medical malpractice insurance crisis which prompted passage of the act in question and the state's interest in lowering the cost of and assuring the availability of medical care for citizens of the state. *See Everett v. Goldman*, supra at 1264, 1266; *Woods v. Holy Cross Hospital*, supra at 1174, 1175. While we have certain reservations about whether the challenged legislation will in fact accomplish those aims, we cannot say that those provisions are without rational relationship to the furtherance of the state's legitimate interests in lowering the cost of and assuring the availability of medical care for its citizens. The hallmark of constitutionality of a challenged statute is not its success or lack thereof, but rather its rational relationship to legitimate state interests. We find that the challenged statute bears such a rational relationship and, accordingly, it does not result in a deprivation of equal protection.

Our disposition of the issues does not require us to state any opinion concerning the Louisiana statute's provision limiting the recovery against a covered health care provider to a maximum of $500,000. *See* LSA–R.S. 40:1299.42 B(1). Although plain-

tiff has prayed for a judgment in excess of that amount, defendant has not raised this question but merely seeks to have plaintiff's claim screened by a review panel. As the provisions of the medical malpractice statute are declared to be severable, we need not consider this issue at present. La. Acts 1975, No. 817 § 2; La. Acts 1976, No. 183 § 8; La. Acts 1977, No. 143 § 2.

## III. PLAINTIFF'S CONTENTION THAT LOUISIANA STATUTE DEPRIVES HIM OF DUE PROCESS

The Supreme Court has enunciated the standard to be applied to a due process challenge such as that asserted by plaintiff: ". . . [L]egislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality and . . . the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way."

*Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976).

■ Again we note that the challenged statute restricts no fundamental right and the state, therefore, is not required to prove a compelling interest is served by it. All that need be shown is a rational relationship to a legitimate government end. *Woods v. Holy Cross Hospital*, supra at 1176, *citing Nebbia v. New York*, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934) and *West Coast Hotel Co. v. Parrish*, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937).

■ Plaintiff's contention with respect to compulsory arbitration was previously raised by the plaintiff in *Woods v. Holy Cross Hospital*, supra at 1177. As noted by the Fifth Circuit, plaintiff confuses arbitra-

---

*Woods v. Holy Cross Hospital*, supra at 1171, n. 11.

The cases of *Simon v. St. Elizabeth Medical Center*, 355 N.E.2d 903 (Ct. of Comm. Pleas 1976) and *Graley v. Sataryatham*, 343 N.E.2d 832 (Ct. of Comm. Pleas 1976) did not dispose of the constitutional issues before us. In both cases, although the Ohio trial courts purported

to decide these issues, they held that the alleged incidents of malpractice had occurred prior to the passage of the challenged legislation and such legislation would not be given retroactive effect. Under such circumstances, the sections of those opinions purporting to deal with constitutional issues are clearly dicta.

tion, which is binding upon all parties to the proceeding, with mediation, which is not binding upon the parties. The Louisiana statute specifically provides that a party who is dissatisfied with the review panel's opinion may file suit and obtain a *de novo* determination of the issue of liability. *See* LSA–R.S. 40:1299.47 A. Furthermore, the Louisiana statute exempts from the requirement of review by the review panel those claims which the parties have agreed to submit for adjudication pursuant to a lawfully binding arbitration procedure. *See* LSA–R.S. 40:1299.47 A. We, therefore, conclude that the procedure does not result in involuntary arbitration.

We also conclude that the challenged provision does not result in plaintiff's being bound by the opinion of the medical review panel and by an expert whom plaintiff did not select. The statute expressly provides that, although the opinion of the review panel is admissible in any subsequent trial, it is not conclusive. *See* LSA–R.S. 40:1299.-47 H.

Plaintiff also alleges that the required pre-screening of medical malpractice claims causes delay and additional expense to victims of medical malpractice. As noted by the Louisiana Supreme Court, with whose comments we are in full agreement, the right of malpractice claimants to sue for damages caused by medical professionals does not involve a fundamental constitutional right. *See Everett v. Goldman,* supra at 1268. When a claimant is asserting a right not subject to special constitutional protection, access to the courts may be restricted if there is a rational basis for that restriction. *See Ortwein v. Schwab,* 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973); *United States v. Kras,* 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973); *Jones v. Union Guano Co.,* 264 U.S. 171, 44 S.Ct. 280, 68 L.Ed. 623 (1924).

We find such a rational basis for restriction in access to the court under the Louisiana statute, whether the opinion of the medical malpractice review panel is favorable or unfavorable to the claimant. If the panel renders an opinion favorable to the claimant, an earlier resolution of plaintiff's claim may result through a voluntary settlement. Even if settlement fails to occur, a plaintiff whose claim has been favorably reviewed by the panel will benefit because of the introduction of the panel's opinion at trial. On the other hand, a claimant whose case has been unfavorably reviewed by the panel receives the evaluation of three experts concerning the merits of his case to assist in his determination whether to file suit and to expose himself to the attendant expenses of litigation. Accordingly, we find that the alleged restriction on access to the courts does not result in denial of due process.

Plaintiff claims the Louisiana statute deprives him of the right to choose an attorney to represent him, deprives him of the right to cross-examine witnesses and permits the panel to consider evidence which would be inadmissible at trial, namely hearsay.

The Louisiana statute contains no prohibition against each party being represented during the review panel proceedings by the attorney of his choice. The attorney-chairman is not the representative of either adversary and he does not vote. Although the panel considers only documentary evidence, such evidence includes depositions, which provision permits the parties an opportunity for cross-examination. *See* LSA–R.S. 40:1299.47 D. Finally, we find no deprivation of due process in the fact that the formal rules of evidence are not required to be adhered to.

## IV. PLAINTIFF'S CONTENTION THAT THE LOUISIANA STATUTE DEPRIVES HIM OF A JURY TRIAL

■ Submission of the plaintiff's claim to a review panel does not deny plaintiff a trial by jury. At trial, the opinion of the panel is not conclusive and the jury is free to disregard it if the panel's conclusion is not supported by the evidence adduced at trial. The mere fact that the panel's opinion may in some instances be unfavorable to plaintiff is no more a deprivation of due process than is the admission of any other

evidence unfavorable to plaintiff. Furthermore, the statute provides that panel members may be cross-examined at trial to determine the basis for their opinion, a right enjoyed by each party with respect to experts called by the opposing party at any trial. This procedure protects both parties against any informalities in the original panel proceedings. Accordingly, we determine that the Louisiana statute does not deprive plaintiff of trial by jury.

## V. PLAINTIFF'S CONTENTION THAT DEFENDANT'S MOTION IS UNTIMELY

Plaintiff claims that defendant's motion for summary judgment is untimely because it was filed shortly before the scheduled trial in this matter. However, plaintiff was on notice long before the motion was filed that Dr. Pou was asserting this defense. Defendant raised the failure by plaintiff to submit his proposed complaint to a review panel in his original answer in this case which he filed December 14, 1977. *See* Record Document No. 5, First Defense. Thereafter, plaintiff ignored this defense at the risk that we would find it meritorious and would declare that he must submit his claim to a review panel.

Also, we note that plaintiff initiated the procedure leading to the convoking of a review panel when he filed a copy of his proposed complaint with the Louisiana Commissioner of Insurance on or about October 25, 1977, the date he filed his complaint in this court. Defendant claims to have been unaware of plaintiff's filing with the Insurance Commissioner until plaintiff adverted to this fact in his memorandum in opposition to the motion for summary judgment. The review panel procedure has apparently been inactive since late 1977 and it appears that plaintiff has taken no steps to have his claim promptly reviewed. Under the circumstances, we do not find that the delay in this matter is entirely attributable to defendant and find that the motion for summary judgment is timely filed.

Defendant has stated that he would be agreeable to a stay of these proceedings pending the issuance of the opinion of the review panel rather than a dismissal of these proceedings. (Record Document No. 37, p. 4.) For the foregoing reasons, we previously denied defendant's motion for summary judgment insofar as defendant sought dismissal of these proceedings and ordered these proceedings stayed pending the issuance of the opinion of a review panel convened pursuant to LSA–R.S. 40:1299.41 *et seq.*