660 F.2d 146
 Manuel F. SEOANE, Individually and as Administrator of the
Estate of Immaculada Julia Seoane and as Tutrix of
his minor children, Sevirino Seoane and
Manuel Seoane, Plaintiffs-Appellants,
v.
ORTHO PHARMACEUTICALS, INC., et al., Defendants,
Frederick A. Pou, M.D. and ABC Insurance Companies,
Defendants-Appellees.
 No. 81-3097
 
 Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 Nov. 2, 1981.
 Terrence J. Hand, New Orleans, La., for plaintiffs-appellants.
 H. Martin Hunley, Jr., New Orleans, La., for Pou.
 William W. Hall, Kenner, La., for La. Patient's Comp. Fund.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before BROWN, POLITZ and WILLIAMS, Circuit Judges.
 POLITZ, Circuit Judge:
 
 
 1
 This appeal presents the question of the constitutionality of the medical malpractice review panel procedure established by Louisiana Revised Statutes 40:1299.41-47. The district court found these procedures applicable in a diversity case and concluded that the statute violated neither the due process nor equal protection provisions of the Constitution. 472 F.Supp. 468 (E.D.La.1979).
 
 
 2
 Manuel F. Seoane, individually and on behalf of his two minor children, filed a medical malpractice claim arising out of the death of his wife, Immaculada Julia Seoane. Ortho Pharmaceuticals, Inc., I. L. Lyons & Co., Ltd., Katz & Besthoff, Inc., Joseph C. Smyth, and Dr. Frederick A. Pou were named as defendants; certain unnamed insurers were also sued. Summary judgment was granted in favor of all named defendants except Pou. A motion by Pou to stay proceedings until the complaint was submitted first to a medical review panel was granted. The matter was reviewed by a panel. Its opinion, favorable to Pou, was admitted into evidence in the subsequent trial. The jury returned a verdict for Pou.
 
 
 3
 The complaint alleges that Dr. Pou examined Mrs. Seoane and, in order to regulate her menstrual cycle, prescribed Ortho-Novum 1/50-21, an oral contraceptive. Shortly after she began taking the medication, Mrs. Seoane died. An autopsy revealed that a pulmonary embolism caused her death. The complaint alleges that Mrs. Seoane's death was caused by Dr. Pou's negligence in diagnosis and treatment. Jurisdiction is based on diversity of citizenship.
 
 The Statute
 
 4
 Act 817 of 1975 of the Louisiana Legislature, as amended by Act 298 of 1979, La.R.S. 40:1299.41-47, provides that no lawsuit may be maintained against a covered health care provider (which includes doctors, nurses and hospitals, among others, who elect to participate) unless the complaint has been presented first to a review panel composed of an attorney and three physicians. The complainant initiates the procedure by filing the proposed complaint with the Louisiana Commissioner of Insurance, who identifies the providers qualified as participants under the statute and forwards a copy to all named defendants and to the Clerk of the Louisiana Supreme Court.
 
 
 5
 The Clerk then prepares a list of five attorneys who reside in the parish of proper venue for a suit against the named health care provider. The parties select one of these attorneys to serve as the non-voting chairman of the panel. The plaintiff and the defendant each select a physician-panelist; these two doctors select a third physician panelist.
 
 
 6
 The panel receives evidence in documentary form, including medical charts, reports, x-rays, lab tests, depositions, excerpts of treatises, and any other evidence deemed appropriate. Either party may request a meeting to question the panel on any matter relevant to the issue to be decided. The panel may seek other information and consult with medical authorities. The parties must be afforded full access to all information submitted to the panel.
 
 
 7
 The panel is charged to "express its expert opinion as to whether or not the evidence supports the conclusion that the defendant ... acted or failed to act within the appropriate standards of care as charged in the complaint." La. R.S. 40:1299.47G. If it finds for the complainant on the question of liability, the panel is required to address issues of causation and the extent of any disability or impairment. The panel makes no findings with respect to damages. The panel's report is admissible in evidence in any subsequent litigation but it "shall not be conclusive." Id. 40:1299.47H. At trial, any party may call any member of the panel to testify.
 
 
 8
 Although a claimant is free to file a lawsuit whether the opinion of the panel is favorable or unfavorable, Mr. Seoane contends that the Louisiana medical malpractice review panel procedure denies the seventh amendment right to a jury trial. In addition, he claims a deprivation of the constitutionally assured rights of equal protection and due process.
 
 Impairment of Jury Trial
 
 9
 In Woods v. Holy Cross Hospital, 591 F.2d 1164 (5th Cir. 1979), we addressed a similar claim with regard to analogous Florida legislation.[1] Two seventh amendment[2] inquiries were presented: (1) was the right to a jury trial unduly burdened by the requirement of panel screening prior to litigation; and (2) did the admission into evidence of the panel's findings on liability usurp the function of the jury.
 
 
 10
 We concluded in Woods that there had been no encroachment of the seventh amendment guarantee. The Constitution mandates "only that the jury ultimately determine the issues of fact if they cannot be settled by the parties or determined as a matter of law." Id. at 1178 (emphasis in original) (citing In re Peterson, 253 U.S. 300, 40 S.Ct. 543, 64 L.Ed. 919 (1920)). In the case at bar, Mr. Seoane presented his case to a jury, which had the plenary and final authority to decide factual disputes. The opinion of the malpractice review panel was not conclusive; the jury was free to disregard it when weighing the totality of the evidence. The statutes clearly prescribe that the panel's report constitutes no more than expert opinion evidence,[3] the use of which is not incompatible with the seventh amendment. Because suit may be filed without regard to the conclusion of the panel, and in light of the statutory declaration that the fact finder is not bound by the panel's opinion, the seventh amendment redoubt is not breached.[4] See, e. g., Meeker v. Lehigh Valley Railroad, 236 U.S. 412, 35 S.Ct. 328, 59 L.Ed. 644 (1915) (Interstate Commerce Act provision that findings of I.C.C. were admissible as prima facie evidence of facts recited therein in a suit to enforce a reparation award was not violative of the seventh amendment); Note, Medical Malpractice Mediation Panels: A Constitutional Analysis, 46 Fordham L.Rev. 322 (1977).
 
 Equal Protection of the Laws
 
 11
 The fourteenth amendment prohibits a state from denying "to any person within its jurisdiction the equal protection of the laws." The rule mandates similar treatment of persons in similar situations. Traditionally, the equal protection analysis has been made against the backdrop of two standards, strict scrutiny and minimum rationality. Strict scrutiny, which is " 'strict' in theory and fatal in fact," Gunther, Forward: In Search of Evolving Doctrine on a Changing Court: A Model For a Newer Equal Protection, 86 Harv.L.Rev. 1, 8 (1972), has been reserved for matters involving race, religion, national origin,[5] and categorizations impinging upon "fundamental rights."[6] To withstand strict scrutiny, a statute necessarily must be related to a compelling state interest. Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973). By comparison, the mere rationality or rational basis test requires only that the legislation under challenge rationally promote a legitimate governmental objective. McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).
 
 
 12
 Recently, the Supreme Court has signaled the development of an intermediate level of scrutiny. See, e. g., Caban v. Mohammed, 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979); Orr v. Orr, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979); Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). Under this standard, a classification is validated if it is reasonable and premised on "some ground of difference having a fair and substantial relationship to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." Reed v. Reed, 404 U.S. at 76, 92 S.Ct. at 254 (quoting S. F. Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920)). To date, the Supreme Court has applied this intermediate level of perlustration only to gender based classifications, see, e. g., Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), and to those categorizations premised on legitimacy. See, e. g., Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977).
 
 
 13
 We are convinced that the equal protection challenge presented by Mr. Seoane must be measured against the rational basis standard. So viewed, the contention that the medical malpractice review panel legislation denies Mr. Seoane and his minor children equal protection of the laws must be rejected.
 
 
 14
 As we observed in Woods v. Holy Cross Hospital, when "a state provision does not violate a fundamental right 'the burden is not upon the state to establish the rationality of its restriction, but is upon the challenger to show that the restriction is wholly arbitrary.' " 591 F.2d at 1174 (quoting Karr v. Schmidt, 460 F.2d 609, 617 (5th Cir.) (en banc), cert. denied, 409 U.S. 989, 93 S.Ct. 307, 34 L.Ed.2d 256 (1972)). That demonstration has not been made in this case. As articulated by the Supreme Court of Louisiana, in upholding the constitutionality of this statutory scheme in a scholarly opinion, the legitimate state function served by this legislation is two-fold: (1) the reduction of health care expenses; and (2) the assurance of more complete medical aid. Everett v. Goldman, 359 So.2d 1256 (La. 1978). See Note, Constitutional Law Louisiana Medical Malpractice Review Panel Upheld Under Equal Protection Scrutiny, 53 Tul.L.Rev. 640 (1979).
 
 
 15
 We do not judge the wisdom of such statutes; that is not our function.[7] Legislation, not otherwise suspect, which is rationally related to valid governmental goals, such as the two set forth in Everett v. Goldman, is not constitutionally infirm. The statute in question does not violate the equal protection clause.
 
 Due Process
 
 16
 The questioned statute does not restrict the exercise of fundamental rights. We are in agreement with the observations of the Louisiana Supreme Court and the district judge herein that the entitlement of a malpractice claimant to sue for damages, allegedly attributable to medical professionals, does not involve the exercise of a fundamental constitutional right. See 359 So.2d at 1268; 472 F.Supp. at 473. Consequently, our review is limited to resolving the question whether the legislation is arbitrary. In doing so, we acknowledge the presumption of constitutionality of legislative acts, such as the statutes challenged, and we note, "the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976). See J. Nowak, R. Rotunda & J. Young, Handbook on Constitutional Law 410 (1978).
 
 
 17
 In brief, the substantive due process inquiry is whether the legislation is reasonable in light of a legitimate governmental goal. West Coast Hotel Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937). The legislation we review has not been shown to be unreasonable, either on its face or as applied. The statutes were enacted to meet a perceived crisis in medical care to maintain the availability of malpractice insurance at acceptable rates. Such is a permissible government objective.
 
 
 18
 The required pre-screening of medical malpractice claims purportedly causes undue delay and expense, depriving claimants of full access to the courts. As a constitutional matter, when a right is not fundamental, access to the courts may be restricted. See, e. g., Ortwein v. Schwab, 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973); United States v. Kras, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973). The apparent purpose of the medical review panel is to screen groundless complaints, assist in the evaluation of legitimate claims, and encourage settlements. Such legislative design is reasonable and seemingly sound. It readily withstands the due process challenge. The limited court access restriction, posed by this statute, does not constitute a denial of due process.
 
 
 19
 For the foregoing reasons, we find that sections 1299.41-47 of Title 40 of the Louisiana Revised Statutes are constitutional.[8]
 
 
 20
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Fla.Stat.Ann. §§ 768.44-.47 (Supp. 1977). The Supreme Court of Florida held the medical mediation act unconstitutional in 1980. Aldana v. Holub, 381 So.2d 231 (Fla.1980). However, the reasons for the court's action are not pertinent in the present case. Aldana v. Holub reasoned the Florida act violated due process "because application of its rigid jurisdictional periods has proven arbitrary and capricious in operation ...." Id. at 238
 2 U.S.Const. amend. VII: "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved ...."
 
 
 [3]
 Rule 702 of the Federal Rules of Evidence states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."
 
 
 [4]
 The district court correctly distinguished Wheeler v. Shoemaker, 78 F.R.D. 218 (D.R.I. 1978), as addressing a statutory medical review board which operated as an adjunct of the state court system. Thus, the statutory scheme "denie(d) the federal court initial jurisdiction," id. at 222, and was not utilized
 To the extent Wheeler v. Shoemaker indicates that federal courts are not required under Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to direct medical malpractice actions to review panels, when state legislation so requiring is extant, the opinion is inconsistent with Woods v. Holy Cross Hospital, 591 F.2d 1164 (5th Cir. 1979). Our view of Erie requires that federal courts, in diversity cases, follow state policy regarding medical review boards. Otherwise, "nonresident plaintiffs would be encouraged to forum shop in the federal courts, and justice would be inequitably applied between resident and non-resident malpractice claimants." Id. at 1170.
 
 
 [5]
 These are the "suspect" classifications. See e. g., Katzenbach v. Morgan, 384 U.S. 641, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966); McLaughlin v. Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964) (race); Oyama v. California, 332 U.S. 633, 68 S.Ct. 269, 92 L.Ed. 249 (1948) (ancestry)
 
 
 [6]
 Rights "explicitly or implicitly guaranteed by the Constitution" are fundamental. San Antonio Independent School Dist. v. Rodriguez, 411 U.S. 1, 33-34, 93 S.Ct. 1278, 1296-1297, 36 L.Ed.2d 16 (1973). Thus far, only the rights of privacy, Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), marriage, Zablocki v. Redhail, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978), voting, Bullock v. Carter, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972), travel, Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), and freedom of association, NAACP v. Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), have received the constitutional fortification which flows from the "fundamental" designation
 
 
 [7]
 "In short, the judiciary may not sit as a super legislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines ...." New Orleans v. Dukes, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976) (citing Day-Brite Lighting, Inc. v. Missouri, 342 U.S. 421, 423, 72 S.Ct. 405, 407, 96 L.Ed. 469 (1952))
 
 
 [8]
 We do not address the issue of the recovery limitation. As the district court cogently noted:
 Our disposition of the issues does not require us to state any opinion concerning the Louisiana Statute's provision limiting the recovery against a covered health care provider to a maximum of $500,000. See LSA-R.S. 40:1299.42B(1). Although plaintiff has prayed for a judgment in excess of that amount, defendant has not raised this question but merely seeks to have plaintiff's claim screened by a review panel. As the provisions of the medical malpractice statute are declared to be severable, we need not consider this issue at present.
 
 
 [472]
 F.Supp. at 472