**Anne W. WALKER, Plaintiff,**

v.

**Honorable Ed JONES, et al., Defendants.**

**Civ. A. No. 82–2723.**

United States District Court, District of Columbia.

Dec. 15, 1987.

John J. Gilece, Bethesda, Md., John P. McGeehan, William Harry Garber, Fairfax, Va., for plaintiff.

Steven R. Ross, Gen. Counsel, Washington, D.C., for defendants.

MEMORANDUM OPINION

JOHN LEWIS SMITH, Jr., District Judge.

## I. *Background*

Plaintiff, Anne Walker, was dismissed as General Manager of the House of Representatives' Restaurant System on June 22, 1982 amidst rumors of unprofessional conduct and dishonesty. She subsequently instituted this action alleging, *inter alia,* that she was unconstitutionally discharged on the basis of her gender. In prior proceedings, this Court initially dismissed plaintiff's claims finding that the actions taken by the congressional defendants and staff in connection with Walker's termination were immunized from judicial inquiry by the Speech or Debate Clause of the Constitution. *Walker v. Jones,* 557 F.Supp. 366, 368 (D.D.C.1983). On appeal, the United States Court of Appeals for the District of Columbia Circuit reversed and remanded the case to this Court for further proceedings, holding that personnel actions taken against congressional food service employees were not protected from court consideration by the Speech or Debate Clause. *Walker v. Jones,* 733 F.2d 923, 925 (D.C.Cir.1984), *cert. denied,* 469 U.S. 1036, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984).

The Court concluded that, "[plaintiff's] claim for damages based on a sex discriminatory congressional employment decision [could] be presented directly under the Fifth Amendment." *Id.* 733 F.2d 923, 933. On remand, this Court referred the case to Magistrate Patrick Attridge who presided over extensive discovery proceedings. On the basis of the undisputed facts developed in those proceedings, this Court granted defendants' motion for partial summary judgment against plaintiff on the conspiracy, contract and due process claims in her complaint and referred the case back to Magistrate Attridge for final pretrial proceedings on her sex discrimination claim. Civ. No. 82–2723, Mem.Op. (D.D.C. June 12, 1986).

Presently before the Court is the defendants' "Motion for Summary Judgment" which alleges that the Court should now relinquish jurisdiction over plaintiff's sex discrimination claim. More specifically, defendants contend that since Congress has provided its own internal sanctions for ethical violations committed by its members, this Court has no jurisdiction to "imply a cause of action under the Constitution." "Dfts' Mot. Sum. Jdgmt." at 1; "House Dfts' Opp. Pltf's Mot. Strike" p. 2 n. 2. For the reasons set forth in the following discussion, the Court concludes that the defendants' motion must be denied.

## II. *Jurisdiction*

█ It should be noted at the outset that in the absence of a "textually demonstrable constitutional commitment of [an] issue to a coordinate political department, *Baker v. Carr,* 369 U.S. 186, 217, 82 S.Ct. 691, 710, 7 L.Ed.2d 663 (1962)," it is presumed that the federal courts have the power to enforce justiciable constitutional .rights. *Davis v. Passman,* 442 U.S. 228, 242, 99 S.Ct. 2264, 2276, 60 L.Ed.2d 846 (1979). The federal district courts have original jurisdiction over "all civil cases arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331(a).

It is well settled that "where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any remedy to make good the wrong done." *Bivens v. Six Unknown Named Federal Narcotics Agents,* 403 U.S. 388, 396, 91 S.Ct. 1999, 2004, 29 L.Ed.2d 619 (1971) (quoting *Bell v. Hood,* 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946)). So too where nonstatutory constitutional rights have been violated, victims are entitled to redress their injuries through "particular remedial mechanism[s] normally available in the federal courts." *Bivens, supra,* 403 U.S. at 397, 91 S.Ct. at 2005.

█ The jurisdictional grant provided by 28 U.S.C. § 1331 authorizes the courts to not only decide whether a cause of action is stated by a plaintiff's claim that he or she has been injured by a violation of the Constitution, "but also the authority to choose among available judicial remedies in order to vindicate constitutional rights." *Bush v.*

**8**

*Lucas,* 462 U.S. 367, 374, 103 S.Ct. 2404, 2409, 76 L.Ed.2d 648 (1983).

■ The plaintiff in this action originally sought an award of damages and injunctive relief in the form of reinstatement on the basis of her claim that the congressional defendants wrongfully discharged her from her position on the basis of her gender in violation of her equal protection rights under the Fifth Amendment. As such, the plaintiff has clearly stated a justiciable constitutional cause of action. *Davis, supra,* 442 U.S. 228, 235, 99 S.Ct. 2264, 2271. *Walker, supra,* 733 F.2d 923 at 933. The Court accordingly concludes that it has jurisdiction over her claim and the power to provide her with an appropriate remedy upon proof of her claim unless either the defendants are immune from liability or Congress has preempted the Court from granting plaintiff any judicial relief.

As a general rule, legislators are liable for tortious violations of the Constitution to the same extent as all other citizens. *Gravel v. United States,* 408 U.S. 606, 615, 92 S.Ct. 2614, 2622, 33 L.Ed.2d 583 (1972). "[J]udicial review of congressional employment decisions is constitutionally limited only by the reach of the Speech or Debate Clause...." *Davis, supra,* 442 U.S. 228, 235 n. 11, 99 S.Ct. 2264, 2272 n. 11. In those instances in which congressional employment decisions are not shielded by the Clause however, the question of whether an employment action was violative of the Fifth Amendment would:

> require no more than an interpretation of the Constitution. Such a determination falls within the traditional role accorded courts to interpret the law and does not involve a 'lack of respect due [a] coordinate branch of government,' nor does it involve an 'initial policy determination of a kind clearly for non judicial discretion.'....

*Powell v. McCormack,* 395 U.S. 486, 548–549, 89 S.Ct. 1944, 1978, 23 L.Ed.2d 491 (1969) (citation omitted).

■ Because it has been determined that the congressional defendants in the case at bar are not shielded by the immunity provided by the Speech or Debate Clause, *see*

*Walker, supra,* 733 F.2d 923, 933, the defendants' "Motion for Summary Judgment," insofar as it alleges that the Court has no jurisdiction to imply a cause of action on plaintiff's constitutional claim, is without merit. *Davis, Bivens, Powell, supra.*

### III. *Remedies*

■ Defendants contend that a cause of action under the Constitution may be implied "only where no alternative remedy [has] been made available" to the plaintiff. "Dft's Mot. for Sum. Jdgmt." p.1 (citing *Bivens* ). More particularly, defendants allege that by virtue of its enactment of the House of Representatives Code of Official Conduct, Congress has prescribed exclusive "remedies" for constitutional violations committed by it own members, and that this Court consequently has no authority to award plaintiff any additional judicial remedies. *Id.* For the purposes of procedural analysis, defendants essentially argue that even if plaintiff has stated a cause of action under the Constitution, she has failed to state a claim "upon which relief can be granted" by the Court. *See* Fed.R.Civ. Proc. 12(b)(6); *see also Davis v. Passman, supra,* 442 U.S. 228 at 243, 99 S.Ct. 2264 at 2276. The Court disagrees.

There can be no question that a damages remedy would be appropriate in this case were plaintiff to successfully prove her sex discrimination claim. "Historically, damages have been regarded as the ordinary remedy for an invasion of personal interests in liberty." *Bivens, supra,* 403 U.S. 388 at 395, 91 S.Ct. 1999 at 2004. Additionally, since the House Administrative Committee has contracted out the provision of food services on the House side of Capitol Hill to a private corporation, it would appear that equitable relief in the form of reinstatement is no longer available. *See* Trans. Motions Hearing, March 31, 1987 pp. 10–11; *Davis, supra,* 442 U.S. 228 at 245, 99 S.Ct. 2264 at 2277. Consequently, the defendants' claim that the House of Representatives' Rules of Official Conduct (House Rules) preclusively bar the federal courts from granting damages to persons

aggrieved by constitutional violations committed by members of Congress is without merit.

■ It should be initially noted in this respect that there is "no explicit congressional declaration" in the House Rules or elsewhere that persons aggrieved by unconstitutional congressional employment discrimination "may not recover money damages from" those responsible for their injury. *Bivens, supra,* 403 U.S. 308 at 397, 91 S.Ct. 1999 at 2005; *Davis, supra,* 442 U.S. 228 at 247, 99 S.Ct. 2264 at 2278. There is likewise no explicit language in the House Rules evincing the intent of Congress to provide exclusive "equally effective alternative remedies" to damages through its own internal disciplinary sanctions. *See Davis, supra,* 442 U.S. 228 at 248, 99 S.Ct. 2264 at 2278. As elaborated by the Supreme Court in *Bush v. Lucas, supra,* "When Congress provides an alternative remedy (to damages), it may, of course, indicate its intent by statutory language, by clear legislative history, or perhaps even by the statutory remedy itself, that the courts power should not be exercised." *Id.* 462 U.S. 367, 378, 103 S.Ct. 2404, 2411.

Stated more particularly, "[d]efendants [must] show that Congress has provided an alternative remedy which it explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective."[1] *Carlson v. Green,* 446 U.S. 14, 18–19, 100 S.Ct. 1468, 1471–1472, 64 L.Ed.2d 15 (1980) (emphasis in original). There is certainly no such explicit declaration by Congress here that the disciplinary sanctions set forth in the House Rules were intended to be an exclusive avenue of redress for persons aggrieved by discriminatory congressional employment actions. Moreover, there is serious question as to whether the sanctions utilized by Congress to discipline members found guilty of ethical violations are meaningful and constitutionally adequate "remedies" designed to compensate victims of unconstitutional actions for the harm they have suffered. *Compare, Bush, supra,* 462 U.S. 367, 378 n. 14, 103 S.Ct. 2404, 2412 n. 14 (Civil Service remedies including reinstatement with retroactive seniority, right to full back pay, including credit for periodic within-grade or step increases and general pay raises, allowances, differentials, and accumulated leave, observed as "constitutionally adequate" remedies).

In *Browning v. Clerk, U.S. House of Representatives,* 789 F.2d 923 (D.C.Cir. 1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 601, 93 L.Ed.2d 601 (1986), the Court of Appeals, in dicta, discussed the "broad grant of power (to Congress) to redress grievances" through the disciplinary proceedings authorized under the House Rules. *Id.* at 931. However, while recognizing the availability of various sanctions which can be imposed by Congress to discipline its own members, the Court ventured no opinion as to whether Congress had "explicitly declared" the disciplinary sanctions to be an exclusive substitute for recovery of damages, "equally effective" under the Constitution. *Green, supra,* 446 U.S. 14, 18–19, 100 S.Ct. 1468, 1471–1472. Accordingly, this Court concludes that pursuant to the principles established by the Supreme Court in *Davis, Bush,* and *Carlson, supra,* the plaintiff has stated a "justiciable constitutional claim upon which relief can be granted". *Id.*

### IV. *Exhaustion of Administrative Remedies*

■ While a majority of the defendants' discussion has been devoted to the issues relating to the Court's jurisdiction over plaintiff's sex discrimination claim, they have also argued alternatively that the Court should abate the proceedings in this forum until plaintiff has exhausted her administrative remedies before the House Committee on Standards of Official Conduct.

---

1. Defendants might also prevail upon a showing that there are "special factors counselling hesitation," against a judicially created damages remedy. *Davis, supra,* 442 U.S. 228, 246, 99 S.Ct. 2264, 2277. Those concerns in this case however, are coextensive with the protections already provided to the congressional defendants through the Speech or Debate Clause; protections which have been found to be inapplicable here. *Id.; see also Walker, supra.*

While it is unclear whether exhaustion is necessary before litigation in such cases, *see Browning, supra,* 778 F.2d 923, 930 n. 14, the Court nevertheless concludes that even if the exhaustion doctrine were applicable, the jurisprudential concerns embodied in the doctrine do not warrant abatement of plaintiff's action here.

In support of their contention that the exhaustion doctrine should be enforced in this case, defendants rely principally on *Seoane v. Ortho Pharmaceuticals, Inc.,* 472 F.Supp. 468 (E.D.La.1979), a case which is entirely inapposite, both from a factual and legal standpoint, from the case at bar. *Seoane* was a diversity medical malpractice action in which the plaintiff challenged the constitutionality of a Louisiana statute prohibiting the institution of a medical malpractice lawsuit before having first submitted a claim to an administrative review panel. Notwithstanding the factual dissimilarity between *Seoane* and this case, it suffices to note that the Louisiana statute in question there expressly declared that presentation of a claim to the administrative review panel was a prerequisite to litigation. *Id.* 472 F.Supp. 468, 469. Additionally, the statute in *Seoane* specifically permitted litigation following the administrative proceeding and *de novo* findings of fact on the issue of liability. *Id.* at 473. Defendants do not suggest that either of these important provisions is specified in the House Rules of the Committee on Standards of Official Conduct.

To the extent that defendants invoke the more general principles of the exhaustion of administrative remedies doctrine, *see* "Dfts' Ans. Pltf's Cmplt." ¶ 11, the Court finds that the purposes of the doctrine would not be advanced by abating resolution of plaintiff's constitutional claim in this forum until she has sought redress in the form of sanctions before the House Committee on Standards of Official Conduct.

One of the foremost goals of the exhaustion doctrine is the promotion of judicial economy. *See I.A.M. National Pension Fund Benefit Plan C v. Stockton Tri Industries,* 727 F.2d 1204, 1210 (D.C.Cir. 1984). This case has been extensively litigated in the courts, having been twice before this Court, twice before a Magistrate, once before the Court of Appeals and once petitioned to the Supreme Court. The parties have engaged in extensive discovery and the Court has recently entered comprehensive findings of fact and conclusions of law on plaintiff's contract, conspiracy and due process claims. Simply stated, the Court's intimate familiarity with this case reinforces the conclusion that judicial economy would be best served by permitting the litigation to continue in this forum.

Another goal of the exhaustion doctrine which would not be promoted by abating this action is the advancement of the application of superior expertise in the resolution of specialized or technical issues, *see Stockton, supra,* 727 F.2d 1204, 1210. However, because it is within the traditional role of the courts to determine whether constitutional rights have been violated, *see Davis v. Passman, supra,* 442 U.S. 228, 235 n. 11, 99 S.Ct. 2264, 2272 n. 11, it is clear that abatement would not further the promotion of that important goal in this case. *See also Barlow v. Collins,* 397 U.S. 159, 166, 90 S.Ct. 832, 837–838, 25 L.Ed.2d 192 (1970).

Additionally, the Court would note that unless Congress has expressly declared exhaustion to be a jurisdictional prerequisite, the "jurisprudential concerns ... embodied in the exhaustion doctrine do not bear on whether the court *has* jurisdiction but only on whether it should exercise that jurisdiction." *Association of National Advertisers, Inc. v. FTC,* 627 F.2d 1151, 1157 (D.C. Cir.1979), *cert. denied,* 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1113 (1980).

The Court accordingly finds that in view of the particular circumstances of this case, it would not be in the best interests of judicial economy for the Court to abate its jurisdiction years after this case has been extensively litigated before this Court, the Magistrate and the Court of Appeals, and require plaintiff to now seek sanctions before the Committee on Standards of Official Conduct.

## V. *The Rulemaking Clause*

Defendants allege in this regard that permitting plaintiff to further litigate her sex discrimination claim in this court before having first gone through the internal House procedure, "would flout the meaning of the Rulemaking Clause." U.S. Const., Art. I, Sec. 5, cl. 2. In support of this contention, defendants cite *Gregg v. Barrett*, 771 F.2d 539, 549 (D.C.Cir.1985); and *Vander Jagt v. O'Neill*, 699 F.2d 1166, 1173 (D.C.Cir.1982). However, both of those cases dealt with the entirely different question of whether congressional plaintiffs could resort to the courts for a judicial determination of the constitutionality of internal rules employed by Congress. No such similar scenario is presented here.

In *Vander Jagt*, the Court declined to interfere in the House's internal rules decisions upon a complaint brought by various congressional plaintiffs who were seeking a judicial determination that the Committee Appointments System employed by the House leadership was unconstitutional. *Id.* 699 F.2d 1166 at 1175. Similarly, in *Gregg*, the Court stayed its hand from even "attempting a diagnosis" of a complaint by various Congressmen alleging that the reporting procedures employed by the House failed to provide accurate transcripts of floor proceedings. *Id.* 771 F.2d 539, 549.

By stark contrast, the claim before the Court in this case is not even remotely similar to those presented in *Vander Jagt* or *Gregg*. The Court has not been called upon here to analyze the propriety of the internal House rules or procedures, but simply to exercise jurisdiction over plaintiff's justiciable constitutional claim that she was illegally discharged by the defendants solely because she was a woman. The Court therefore rejects defendants' claim that permitting plaintiff to litigate her claim in this forum without first going before the House Committee on Official Conduct violates the Rulemaking Clause.

## VI. *Conclusion*

In conclusion, the Court finds that plaintiff has stated a justiciable cause of action under the Constitution, that the Court has original subject matter jurisdiction, that the plaintiff has stated a claim upon which relief can be granted, and that the case can proceed on the merits in this forum. Accordingly, the defendants' "Motion for Summary Judgment" will be denied.

An appropriate order follows.

## ORDER

Upon consideration of the defendants' "Motion for Summary Judgment on Count I" the "Motion of Plaintiff for Certification Pursuant to Rule 54(b), or, in the alternative, Pursuant to 28 U.S.C. § 1292(b); and for Stay of Proceedings Pursuant to Rule 62(h)," the parties' respective oppositions to the motions, oral arguments, and the entire record, it is by the Court this 15th day of December, 1987

ORDERED that based upon the reasons set forth in the accompanying Memorandum, the defendants' "Motion for Summary Judgment on Count I" is denied; it is further

ORDERED that the "Motion of Plaintiff for Certification Pursuant to Rule 54(b); or, in the alternative, Pursuant to 28 U.S.C. § 1292(b); and, for Stay of Proceedings Pursuant to Rule 62(h)" is denied; and it is further

ORDERED that pursuant to Fed.R.Civ. P. 53 the case is referred to United States Magistrate Attridge for final pretrial proceedings.