

# THE ATTORNEY GENERAL
## OF TEXAS

THIS OPINION
OVERRULES OPINION
NO. WW-114
IN PART

THIS OPINION
OVERRULES OPINION
NO. O-3562
IN PART

January 20, 1987

JIM MATTOX
ATTORNEY GENERAL

Mr. Allen Parker, Sr.
Commissioner
Texas Department of
   Labor & Standards
P. O. Box 12157
Austin, Texas   78711

Opinion No. JM-623

Re:  Constitutionality of article 5196, V.T.C.S., requiring corporations to give a written statement of cause for discharge of employees

Dear Mr. Parker:

You have requested our opinion regarding the validity of section 3 of article 5196, V.T.C.S. The statute was originally enacted in 1907 by the Thirtieth Legislature. See Acts 1907, 30th Leg., ch. 67, at 142. The 1907 version provided:

> Either or any of the following acts shall constitute discrimination against persons seeking employment:
>
> . . . .
>
> (3) Where any corporation or receiver of same, doing business in this state, or any agent or employee of such corporation or receiver, shall have discharged an employee, and such discharged employee demands a statement in writing, of the cause of his discharge, and such corporation, receiver, agent or employee thereof fails to furnish a true statement of same to such employee within ten days after such demand, provided, that such demand by the employee for said statement shall be made in writing. . . .

Acts 1907, 30th Leg., ch. 67, at 142. This statute, as amended in 1909, was ruled unconstitutional by the Texas Supreme Court in St. Louis Southwestern Railway Co. of Texas v. Griffin, 171 S.W. 703 (Tex. 1914).

This statute was reenacted in 1929 in its present form, which provides:

> Either or any of the following acts shall constitute discrimination against persons seeking employment:

. . . .

3. Where any corporation, or receiver of the same, doing business in this state, or any agent or employee of such corporation or receiver, shall have discharged an employee and such employee demands a statement in writing of the cause of his discharge, and such corporation, receiver, agent or employee thereof fails to furnish a true statement of the same to such discharged employee, within ten days after such demand, or where any corporation or receiver of the same, or any officer or agent of such corporation or receiver shall fail, within ten days after written demand for the same, to furnish to any employee voluntarily leaving the service of such corporation or receiver, a statement in writing that such employee did leave such service voluntarily, or where any corporation or receiver of the same, doing business within this state, shall fail to show in any statement under the provision of this title the number of years and months during which such employee was in the service of the said corporation or receiver in each and every separate capacity or position in which he was employed, and whether his services were satisfactory in each such capacity or not, or where any such corporation or receiver shall fail within ten days after written demand for the same to furnish to any such employee a true copy of the statement originally given to such employee for his use in case he shall have lost or is otherwise deprived of the use of the said original statement.

See Acts 1929, 41st Leg., ch. 245, §1, at 509; see also Attorney General Opinion O-3562 (1941) (general history of this law against blacklisting).

The Griffin case held, among other things, that the impairment of a corporation's right to discharge employees at will without cause by the state is a violation of the corporation's constitutional right of liberty of contract, which right includes the corresponding right to accept a contract proposal. 171 S.W. at 704. In addition, the court held that the impairment of a corporation's right to discharge employees without cause by the statute is a denial of the equal protection of the laws secured by the Fourteenth Amendment to the United States Constitution. The court also held that article I, section 8, of the Texas Constitution was violated because the liberty to speak or write includes the corresponding right to be silent and this right was infringed by the provisions of the statute compelling a corporation to give a discharged employee a statement of the cause of

the discharge. Id. at 705. Therefore, the decision rested on both federal and state constitutional grounds.

When the codifiers of the Revised Civil Statutes of Texas in 1925 revised article 594, the definition of discrimination by employers was omitted along with many of the material provisions of the former law on that subject, thereby prompting the Forty-first Legislature to reenact article 5196 in its present form. See Acts 1929, 41st Leg., ch. 245, §§1, 2, at 509. Apparently there was no law on the matter covered by article 5196 between 1925 and 1929.

In 1941 this office considered the validity of section 3 of article 5196 and held that

> the reason that the codifiers of the Revised Civil Statutes of Texas, of 1925, omitted said [1909 Act as amended] from the 1925 codification was due to the fact that this [Act] had been declared unconstitutional by the Supreme Court in the case of St. Louis Railway Co. v. Griffin.
>
> It is our opinion that the decision of the Supreme Court in the above cited case is controlling and decides the question presented in your inquiry; therefore, it is the opinion of this department that section 3 of article 5196, Vernon's Civil Statutes is unconstitutional, and that a corporation is not required to give a discharged employee a statement in writing of the cause of his discharge. . . .

Attorney General Opinion O-3562 (1941). In 1957, the Attorney General reaffirmed the 1941 Opinion and interpreted the Griffin case as invalidating not only section 3, but the entire act. See Attorney General Opinion WW-114 (1957). You have asked us to reconsider and to overrule these two prior Attorney General Opinions to conform with intervening judicial decisions and statutory enactments. We will evaluate section 3 of article 5196, V.T.C.S., in light of those considerations.

You make three suggestions as to why the Griffin case is no longer controlling and the Attorney General Opinions should be overruled.

First, you argue that the idea of substantive due process upon which the Griffin case was based has been discredited. The Griffin case was decided during a period when the United States Supreme Court used the Fourteenth Amendment to the United States Constitution as a protection of fundamental economic and property rights particularly in the area of labor legislation. See, e.g., Lochner v. New York, 198 U.S. 45 (1905); Coppage v. Kansas, 236 U.S. 1 (1915); Railroad

Retirement Board v. Alton Railroad Co., 295 U.S. 330 (1935); see also L. Tribe, American Constitutional Law, at 439-42 (1978); G. Gunther, Constitutional Law, at 502-33 (10th ed. 1980). For example, in Lochner v. New York, the Court held invalid a New York law prohibiting the employment of bakery employees for more than ten (10) hours per day or sixty (60) hours per week. Justice Peckham, writing for the majority, reasoned that although the state has the authority, through its police power, to enact legislation to conserve the morals and the health or safety of the people, such power is limited by the right of the individual to liberty of person and freedom of contract. 198 U.S. at 57. The liberty of an individual to make contracts for labor applied to both the employer and employee. 198 U.S. at 59. Consequently, the liberty to contract was viewed as a fundamental economic right and the state could not interfere with that right "unless there be some fair ground, reasonable in and of itself, to say that there is material danger to the public health or safety of the employees." 198 U.S. at 61. It is this concept of substantive due process upon which the Texas Supreme Court based its decision in the Griffin case in 1914.

However, the substantive due process reasoning employed by the Griffin court is no longer a viable analysis under federal constitutional law. See West Coast Hotel Co. v. Parrish, 300 U.S. 379 (1937); Nebbia v. New York, 291 U.S. 502 (1934). The prevailing standard used to evaluate state legislative action is whether an economic regulation is reasonable in relation to its subject and is adopted in the interests of the community. West Coast Hotel Co. v. Parrish, 300 U.S. at 381. Therefore, a state may deprive an individual of his liberty or freedom of contract in the exercise of its police power, if the legislative action is not arbitrary or capricious, and as long as procedural due process is given.

This prevailing standard was articulated by the United States Supreme Court as follows:

> So far as the requirement of due process is concerned, and in the absence of other constitutional restriction, a state is free to adopt whatever economic policy may reasonably be deemed to promote public welfare, and to enforce that policy by legislation adapted to its purpose. The courts are without authority either to declare such policy, or, when it is declared by the legislature, to override it. If the laws passed are seen to have a reasonable relation to a proper legislative purpose, and are neither arbitrary nor discriminatory, the requirements of due process are satisfied, and judicial determination to that effect renders a court functus officio. . . .

Nebbia v. New York, 291 U.S. at 537. It is this standard we must employ in determining whether article 5196, as amended in 1929, violates the due process clause of the Fourteenth Amendment to the United States Constitution. Accordingly, the sole question in this respect is whether the statute is reasonable in relation to its subject and adopted in the interests of the community. See, e.g., West Coast Hotel Co. v. Parrish, 300 U.S. 379 (1937); see also Seoane v. Ortho Pharmaceuticals, Inc., 660 F.2d 146 (5th Cir. 1981).

The Supreme Court has previously upheld the Missouri "service letter" statute finding it to be within the state's police power and not an arbitrary interference with freedom of contract amounting to a deprivation of liberty or property without due process. See Prudential Insurance Co. v. Cheek, 259 U.S. 530 (1922); see also State v. Hughes, 169 S.W.2d 328 (Mo. 1943) (statute held constitutional under state constitution). The service letter statute, similar to section 3 of article 5196, V.T.C.S., required corporations to issue service letters on request of corporation employees discharged or voluntarily quitting its service. The Supreme Court in the Cheek case reasoned that the Missouri statute was enacted to prevent injustice and oppression which had become so great as to be a public evil to large numbers of laboring people. 259 U.S. at 535. Regardless of the Griffin decision, we believe that the United States Supreme Court, applying its present substantive due process analysis to section 3 of article 5196, V.T.C.S., would reach a similar conclusion. Accordingly, we believe that section 3 of article 5196, V.T.C.S., has a reasonable relation to a proper legislative purpose and does not violate the due process clause of the Fourteenth Amendment to the United States Constitution.

The Griffin court also based its decision on the equal protection clause of the Fourteenth Amendment to the United States Constitution. We believe that the argument set forth in Griffin is no longer valid under present equal protection analysis. Section 3 of article 5196 should be evaluated under the present rational basis standard. In light of the present standard, which is the same as the substantive due process standard, the statute does not violate the constitutional equal protection provision. See Seoane v. Ortho Pharmaceutical, Inc., 660 F.2d 146 (5th Cir. 1981).

Finally, the Griffin case also declared the 1907 version of section 3 of article 5196 invalid because the provision violated article I, section 8, of the Texas Constitution. See 171 S.W.2d at 705. As stated above, the Texas Supreme Court held that article I, section 8, was violated because the corporation had a right of "liberty to speak" or write, and this right carried with it the corresponding right to be silent or not to give a discharged employee a statement of the cause of the discharge. Id. This construction of article I, section 8, has never been challenged in our court system.

Although the "liberty to speak" guaranteed in article I, section 8, of the Texas Constitution is similar but not identical to the right of free speech guaranteed by the First Amendment to the United States Constitution, the Texas courts may construe article I, section 8, more strictly than federal courts have construed the free speech clause of the First Amendment.  Cf. Pruneyard Shopping Center v. Robins, 447 U.S. 74 (1980); Cooper v. California, 386 U.S. 58, 62 (1967). But the state court's construction of a state constitutional provision cannot have the effect of denying an individual any federal constitutional right.  See Pruneyard Shopping Center v. Robins, supra.

Therefore, under article I, section 8, of the Texas Constitution, a corporation has the right not to speak or write letters of discharge.  Even though we may disagree with this interpretation, we are not at liberty to modify or overrule the Texas Supreme Court's holding in Griffin.  This is especially true since our legislature and courts have not done so.

Moreover, the corporation's right should not be abridged when the legislature has enacted other statutes to curb the problem intended to be solved.  See, e.g., V.T.C.S. arts. 5196c (definition of black-listing); 5196d (prohibition against blacklisting); 5196e (penalty for engaging in blacklisting).

Attorney General Opinions O-3562 (1941) and WW-114 (1956) are overruled to the extent they conflict with this opinion.

### S U M M A R Y

Section 3 of article 5196, V.T.C.S., does not violate the due process clause nor the equal protection clause of the Fourteenth Amendment to the United States Constitution.  However, the statute does violate article I, section 8, of the Texas Constitution which has been interpreted to grant a corporation the right not to write letters stating the true cause of discharging employees.

Very truly yours

JIM  MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Tony Guillory
Assistant Attorney General